SPECIALTY RESTAURANTS CORP. and Colorado Insurance Guaranty Association c/o Western Guaranty Fund Services, Petitioners,

v.

Stephanie NELSON and Industrial Claim Appeals Office of the State of Colorado, Respondents.

No. 09SC536.

Supreme Court of Colorado, En Banc.

May 10, 2010.

394

McElroy, Deutsch, Mulvaney & Carpenter, LLP, Kristin A. Caruso, Nancy A. Fitzgerald, Greenwood Village, CO, Attorneys for Petitioners.

The Law Office of Stephanie J. Stevenson, P.C., Stephanie J. Stevenson, Colorado Springs, CO, Attorney for Respondents.

Workers' Compensation Education Association, Susan D. Phillips, Denver, CO, Attorney for Amici Curiae Workers' Compensation Education Association.

Justice HOBBS delivered the Opinion of the Court.

We granted certiorari in this workers' compensation case to determine whether an employee who was injured in 1990, awarded permanent and total disability ("PTD") benefits in 2002, and received a lump sum payment in 2007 is entitled to an additional lump sum payment under a 2007 amendment to section 8-43-406, C.R.S. (2009), of the Colorado Workers' Compensation Act, which increased the maximum aggregate lump sum an employee may receive.[1] We find she is.

---

1. The issues presented on certiorari are as follows:

Whether the court of appeals erred in holding that the 2007 amendment to section 8-43-406(2), C.R.S., which increased the aggregate maximum lump sum payment available to a workers' compensation claimant, applied to a claimant whose injury occurred prior to the amendment.

Whether the court of appeals erred in failing to apply the presumption that a prior judicial interpretation of a statutory provision is adopted by the legislature when that same statutory provision is amended.

We hold that the lump sum provision of the Colorado Workers' Compensation Act is procedural in nature. An employee's election of a lump sum payment functions as an advance of an award of PTD benefits to which the employee already is entitled. Consequently, a lump sum payment does not create, eliminate, or modify the parties' existing rights or liabilities, which are determined as of the date of .injury but vest only upon entry of an award of benefits. Instead, an employee's election of a lump sum payment simply alters the method of distribution of an existing award. Because the 2007 amendment is procedural in nature, it applies prospectively to requests for lump sum payments filed subsequent to the amendment's date of enactment, irrespective of the date of the employee's injury.

Because the court of appeals' opinion in *Eight Thousand West Corp. v. Stewart*, 37 Colo.App. 372, 546 P.2d 1281 (1976), does not constitute a prior judicial interpretation of particular language that has remained unchanged throughout subsequent amendments, we find it inapposite and overrule it to the extent it is inconsistent with this opinion. Accordingly, we affirm the judgment of the court of appeals.

## I.

On June 1, 1990, Stephanie Nelson suffered an admitted work-related injury while employed by Specialty Restaurants Corp. On December 5, 2006, an administrative law judge ("ALJ") determined that Nelson's injury left her permanently and totally disabled as of October 21, 2002, and ordered Specialty Restaurants Corp. and Colorado Insurance Guaranty Association ("CIGA"), on behalf of Western Guaranty Fund Services,[2] to pay Nelson PTD benefits. This opinion refers to petitioners Specialty Restaurants Corp. and CIGA c/o Western Guaranty Fund Services collectively as "CIGA."

Pursuant to section 8–43–406 of the Colorado Workers' Compensation Act, Nelson requested and received a lump sum payment of $26,292 in February 2007. This amount was the statutory maximum aggregate lump sum available at the time of Nelson's injury. Ch. 62, sec. 1, § 8–43–406(2), 1990 Colo. Sess. Laws 515.

In May 2007, the General Assembly amended section 8–43–406 to, inter alia, increase the maximum aggregate lump sum to $60,000. Ch. 341, sec. 9, § 8–43–406, 2007 Colo. Sess. Laws 1474–75. The General Assembly did not include an effective date in the 2007 amendment. The Colorado Division of Workers' Compensation ("the Division") issued a non-binding advisory interpreting the 2007 amendment as "[a]pplicable to all claims without regard to date of injury" and "[e]ffective upon signature of the Governor," which occurred on May 30, 2007.

On October 28, 2007, Nelson applied for an additional lump sum payment of $33,708, the difference between the newly-enacted $60,000 maximum aggregate lump sum and the $26,292 lump sum payment she received in February 2007. CIGA objected to Nelson's request for the additional lump sum payment, arguing that the court of appeals' decision in *Eight Thousand West* entitles an employee only to the maximum aggregate lump sum available at the time of injury.

In a December 19, 2007 order, the Director of the Division rejected CIGA's argument and directed it to pay the additional lump sum. The Director reasoned that the 2007 amendment affects only the procedural method of disbursing previously awarded benefits. Therefore, the Director found that the 2007 amendment applies to requests for lump sum payments filed after its enactment, irrespective of the date of injury. CIGA petitioned the Industrial Claim Appeals Office ("the ICAO") for review of the Director's order.

The ICAO issued an order on May 2, 2008, reversing the Director's order. The ICAO

---

**2.** CIGA is a nonprofit, unincorporated entity created by statute to raise funds for payment of certain claims, including workers' compensation claims, which would otherwise remain unpaid by insolvent insurers. *See* Colorado Insurance Guaranty Association Act, §§ 10–4–501 to –520, C.R.S. (2009). CIGA raises funds via a two-percent assessment against private insurers' net direct written premiums, § 10–4–508(1)(c), and assumes the rights and responsibilities of member insurers who become insolvent, § 10–4–508(1)(b). In this case, CIGA is acting on behalf of Specialty Restaurants Corp.'s insurer, Western Guaranty Fund Services.

did not engage in an interpretation of the 2007 amendment. Instead, it simply concluded that the court of appeals' decision in *Eight Thousand West* controls and that the Director's determination was contrary to the holding in that case. Nelson appealed.

The court of appeals reversed the ICAO's order. It determined that the 2007 amendment is procedural in nature and operates prospectively on requests for lump sum payments filed after its date of enactment. The court of appeals specifically declined to follow *Eight Thousand West,* reasoning that the opinion "provided little analysis and premised its conclusion on consideration of the effect retroactive application of the statute would have on insurers[, which is] a policy consideration within the province of the General Assembly and not this court." *Nelson v. Indus. Claim Appeals Office,* 219 P.3d 416, 420 (Colo.App.2009). We granted CIGA's petition for certiorari to determine whether Nelson is entitled to the additional lump sum payment under the 2007 amendment. We find she is.

## II.

■ We hold that the lump sum provision of the Colorado Workers' Compensation Act is procedural in nature. An employee's election of a lump sum payment functions as an advance of an award of PTD benefits to which the employee already is entitled. Consequently, a lump sum payment does not create, eliminate, or modify the parties' existing rights or liabilities, which are determined as of the date of injury but vest only upon entry of an award of benefits. Instead, an employee's election of a lump sum payment simply alters the method of distribution of an existing award. Because the 2007 amendment is procedural in nature, it applies prospectively to requests for lump sum payments filed subsequent to the amendment's date of enactment, irrespective of the date of the employee's injury.

### A. Standard of Review & Statutory Construction

■ Statutory construction is a question of law we review de novo. *Williams v. Kunau,* 147 P.3d 33, 36 (Colo.2006). Our pri-

mary objective in construing a statute is to effectuate the intent of the General Assembly. *Davison v. Indus. Claim Appeals Office,* 84 P.3d 1023, 1029 (Colo.2004). If the statutory language is clear, we interpret the statute according to its plain and ordinary meaning. *Id.* If the statute is reasonably susceptible to multiple interpretations, we may look to other aids in construction. *Williams,* 147 P.3d at 36. In addition, we will not construe a statute in a manner that assumes the General Assembly made an omission; rather, the General Assembly's failure to include particular language is a statement of legislative intent. *Romer v. Bd. of County Comm'rs,* 956 P.2d 566, 576 (Colo. 1998).

■ We also review an administrative agency's conclusions of law de novo. *Dep't of Labor & Employment v. Esser,* 30 P.3d 189, 193 (Colo.2001). We give considerable weight to an agency's reasonable interpretation of its own enabling statute, but we are not bound by its legal interpretations. *Anderson v. Longmont Toyota, Inc.,* 102 P.3d 323, 326 (Colo.2004). Further, we traditionally give deference to the interpretation of a statute adopted by the officer or agency charged with its administration. *Indus. Claim Appeals Office v. Orth,* 965 P.2d 1246, 1254 (Colo.1998). The Division is the agency charged with administration of the Colorado Workers' Compensation Act, § 8–1–103, C.R.S. (2009), including the calculation of lump sum payments, § 8–43–406(1).

■ The General Assembly explicitly stated its intent that the purpose of the Workers' Compensation Act is to provide an effective remedy for employees injured at work:

It is the intent of the general assembly that the "Workers' Compensation Act of Colorado" be interpreted so as to assure the quick and efficient delivery of disability and medical benefits to injured workers at a reasonable cost to employers, without the necessity of any litigation, recognizing that the workers' compensation system in Colorado is based on a mutual renunciation of common law rights and defenses by employers and employees alike.

§ 8–40–102(1), C.R.S. (2009). To effectuate its remedial and beneficent purposes, we must liberally construe the Act in favor of the injured employee. *Williams*, 147 P.3d at 36, 39; *Davison*, 84 P.3d at 1029; *Univ. of Denver v. Indus. Comm'n of Colo.*, 138 Colo. 505, 509, 335 P.2d 292, 294 (1959).

## B. Lump Sum Payment of PTD Benefits

■ Under the Act, an employee is permanently and totally disabled when she is "unable to earn any wages in the same or other employment." § 8–40–201(16.5)(a), C.R.S. (2009). The Division awards a permanently and totally disabled employee a fixed percentage of her average weekly wage, to continue until her death, irrespective of the employee's life expectancy. § 8–42–111(1), C.R.S. (2009). Accordingly, PTD benefits provide wage loss protection for the life of an injured employee who is unable to return to the work force. *Culver v. Ace Elec.*, 971 P.2d 641, 652 (Colo.1999). While the substantive rights and liabilities of the parties to a workers' compensation case are determined as of the date of the employee's injury, *City of Florence v. Pepper*, 145 P.3d 654, 659–60 (Colo.2006); *Am. Comp. Ins. Co. v. McBride*, 107 P.3d 973, 977 (Colo.App.2004), they vest only upon entry of an award of benefits, *McBride*, 107 P.3d at 979; *Wood v. Beatrice Foods Co.*, 813 P.2d 821, 823 (Colo.App.1991).

Nearly a century ago, the General Assembly determined that the Industrial Commission of Colorado (now the Division) could exercise discretion to order payment of part or all of a PTD compensation award in the form of a lump sum. Ch. 210, sec. 82, 1919 Colo. Sess. Laws 734. Since 1919, lump sum payments have been calculated based both on a four-percent reduction from the default bi-weekly partial payments and on the employee's life expectancy. *Compare id.* ("[T]he Commission shall fix the amount to be paid based on the present worth of partial payments considering interest at 4% per annum, and less deductions for the contingenc[y] of death ....."), *with* § 8–43–406(1) ("[T]he Director shall calculate amounts to be paid

based on the present worth of partial payments, considering interest at four percent per annum, and less a deduction for the contingency of death."). In other words, a lump sum is an advance payment of the amount the employee is entitled to receive via bi-weekly payment over the remainder of her life expectancy, reduced by four-percent to discount for present value and capped at the maximum aggregate provided by statute. *See* § 8–43–406(1). If an employee is entitled to more than the maximum aggregate lump sum available, her remaining bi-weekly payment is reduced by the amount of the lump sum payment spread out over the remainder of her life expectancy. *See* 17 Douglas R. Phillips & Susan D. Phillips, *Colorado Practice Series: Colorado Workers' Compensation Practice and Procedure* § 6.61 at 335 (2d ed.2005). Accordingly, the amount of an employee's PTD award remains unchanged irrespective of a lump sum payment.

■ Since the statute's inception, the General Assembly has provided a cap to the total amount an employee may receive via lump sum payment.[3] *See* ch. 210, sec. 82, 1919 Colo. Sess. Laws 734. The original aggregate could not exceed $3,125. *Id.* Periodically, the General Assembly has increased this cap to account for changing economic realities. For example, in 1971 the General Assembly increased the aggregate to $20,266.75. Ch. 225, sec. 14, § 81–13–3(2), 1971 Colo. Sess. Laws 910–11. The General Assembly explicitly provided that the 1971 amendment was effective July 1, 1971. Ch. 225, sec. 23, 1971 Colo. Sess. Laws 914. In 1975, the General Assembly increased the aggregate to $26,292, effective September 1, 1975. Ch. 71, secs. 38, 63, § 8–52–103(2), 1975 Colo. Sess. Laws 305, 311. The 1990 recodification of the entire Workers' Compensation Act, effective July 1 of that year, included the same $26,292 cap as the 1975 amendment. Ch. 62, secs. 1, 78, § 8–43–406(2), 1990 Colo. Sess. Laws 515, 576. In 1991, the General Assembly again increased

---

**3.** The cap applies to the *aggregate* lump sum available, which, in any particular case, may be a single lump sum payment not to exceed the cap or multiple lump sum payments which together

may not exceed the cap. *See Ritter v. Indus. Comm'n*, 44 Colo.App. 32, 33, 615 P.2d 40, 41 (1980).

the aggregate to $37,560. Ch. 219, sec. 41, § 8–43–406(2), 1991 Colo. Sess. Laws 1326. The 1991 amendment specified that it "shall take effect July 1, 1991, and shall apply to injuries occurring on or after said date." Ch. 219, sec. 61, 1991 Colo. Sess. Laws 1342.

In 2007, the General Assembly made significant changes to the lump sum provision. First, it determined that distribution of a lump sum payment no longer lies within the discretion of the Division, as it had since 1919. Instead,

> [a]t any time after six months have elapsed from the date of injury, the claimant may elect to take all or any part of the compensation awarded in a lump sum by sending written notice of the election and the amount of benefits requested to the carrier or the noninsured or self-insured employer.

Ch. 341, sec. 9, § 8–43–406(1), 2007 Colo. Sess. Laws 1475 (emphasis added). Thus, the employee may choose whether to receive a lump sum payment in exchange for the four-percent reduction, and, unless she affirmatively elects to do so, PTD benefits are paid bi-weekly.

Second, as it has done periodically since the 1919 enactment of the lump sum provision, the General Assembly chose to increase the maximum aggregate lump sum available: "[t]he aggregate of all lump sums granted to a claimant who has been awarded compensation shall not exceed sixty thousand dollars." Ch. 341, sec. 9, § 8–43–406(2), 2007 Colo. Sess. Laws 1475. The General Assembly did not include an effective date in the 2007 amendment.

### C. Prospective, Retroactive, and Retrospective Operation of Statutes

A statute is applied prospectively if it operates on transactions that occur after its effective date; it is applied retroactively if it operates on transactions that have already occurred or on rights and obligations that existed before its effective date. *Ficarra v.*

*Dep't of Regulatory Agencies,* 849 P.2d 6, 11 (Colo.1993). Absent legislative intent to the contrary, a statute is presumed to be prospective in its operation. § 2–4–202, C.R.S. (2009); *Ficarra,* 849 P.2d at 13. A statute may operate retroactively if the General Assembly clearly so intends and if it does not violate the constitutional prohibition against retrospective application. Colo. Const. art. II, § 11; *Ficarra,* 849 P.2d at 11–12.

"A statute is retrospective if it takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *In re Estate of DeWitt,* 54 P.3d 849, 854 (Colo.2002) (internal quotations omitted); *see also People ex rel. Albright v. Bd. of Trustees of Firemen's Pension Fund,* 103 Colo. 1, 13, 82 P.2d 765, 771 (1938). A vested right is one with an independent existence; it is no longer dependent for its assertion upon the common law or statute under which it was acquired. *Ficarra,* 849 P.2d at 15.

A statute is substantive if it creates, eliminates, or modifies vested rights or liabilities. *In re Estate of DeWitt,* 54 P.3d at 854 n. 3. A statute is not substantive merely because the facts upon which it operates occurred before the adoption of the statute. *Id.* at 855. In contrast, a procedural statute relates only to remedies or modes of procedure to enforce existing substantive rights or liabilities, and thus may be applied retroactively without invoking constitutional considerations. *Id.* at 854, 854 n. 3. In other words, retroactive operation of a substantive statute constitutes impermissible retrospective application of that statute. As we explained over seventy years ago, "an act is not retro[spective] if it applies to persons who presently possess a continuing status even though a part or all of the requirements to constitute it were fulfilled prior to the passage of the act or amendments thereto." *Albright,* 103 Colo. at 13, 82 P.2d at 771.[4] Generally, a statute that leaves the rights and obligations

---

4. Our statement in *Albright* uses the term "retroactive" instead of "retrospective." However, the opinion uses the two terms interchangeably, as subsequent case law has recognized. *See, e.g.,*

*Taylor v. Pub. Employees Ret. Ass'n,* 189 Colo. 486, 488 n. 2, 542 P.2d 383, 385 n. 2 (1975). We no longer equate the two terms. *See In re Estate of DeWitt,* 54 P.3d at 854.

of each party in balance is not retrospective. *See Taylor v. Pub. Employees Ret. Ass'n*, 189 Colo. 486, 488, 542 P.2d 383, 385 (1975).

While the substantive rights and liabilities of the parties to a workers' compensation case are determined by the statute in effect at the time of an employee's injury, procedural changes to the statute become effective during the pendency of a claim. *City of Florence*, 145 P.3d at 659–60; *McBride*, 107 P.3d at 977. The employee's right to receive benefits and the employer's and insurer's liability to pay those benefits gain independent legal existence upon entry of an award of benefits. *See Ficarra*, 849 P.2d at 15. Accordingly, the parties' rights and liabilities, although determined as of the date of injury, do not vest until entry of an award of benefits. *McBride*, 107 P.3d at 979; *Wood*, 813 P.2d at 823.

### D. Application to this Case

#### 1. The 2007 Amendment is Procedural in Nature

The plain language of section 8–43–406 evinces legislative intent that a lump sum payment function as an advance on an award of PTD benefits to which the employee already is entitled. *See Univ. of Denver*, 138 Colo. at 510–11, 335 P.2d at 294. Entry of an award of PTD benefits vests an employee with a right to those benefits and imposes upon the employer and insurer a liability to pay those benefits. *See Ficarra*, 849 P.2d at 15; *McBride*, 107 P.3d at 979; *Wood*, 813 P.2d at 823. The employee then has the option to receive her award via either the default bi-weekly payments or lump sum payment.

An employee's choice to receive a lump sum payment does not create, eliminate, or modify vested rights or liabilities. *See In re Estate of DeWitt*, 54 P.3d at 854 n. 3. At the time an employee elects to take a lump sum payment, the parties "possess a continuing status" by virtue of the existing award of PTD benefits. *See Albright*, 103 Colo. at 13, 82 P.2d at 771. Instead, election of a lump sum payment simply alters the method of distribution of the existing award by requiring the employer and insurer to advance payment of part or all of the compensation due. In so doing, the General Assembly enacted safeguards to ensure that the parties' interests are balanced. *See Taylor*, 189 Colo. at 488, 542 P.2d at 385. In exchange for receiving an advanced payment of awarded benefits via lump sum, the employee receives four percent less than she otherwise would have via bi-weekly partial payments. *See* § 8–43–406(1). Because an employee's election of a lump sum payment constitutes only a change in how and when the benefits are distributed, subsection 8–43–406(1) is procedural in nature.

For similar reasons, subsection 8–43–406(2) also is procedural in nature. For nearly a century, the General Assembly periodically has increased the maximum aggregate lump sum available to injured employees to ensure that distribution of their award reflects current economic realities. These amendments recognize that changing economic circumstances affect permanently and totally disabled employees—who depend on their PTD benefits in the same way that uninjured employees depend on their wages—irrespective of the date of their injuries. Such amendments do not create, eliminate, or modify vested rights or liabilities; they affect only the method of distributing the award and not the award itself. *See In re Estate of DeWitt*, 54 P.3d at 854 n. 3. A doubling of the maximum aggregate lump sum to which an employee is entitled does not double the employer's or insurer's liability. Instead, it simply increases the proportion of that already vested liability that may be subject to advancement via lump sum payment. Moreover, the 2007 amendment, like all its predecessors, requires that the increased maximum aggregate lump sum available is subject to the four-percent reduction to account for present value. § 8–43–406(1). Accordingly, the 2007 amendment increasing the maximum aggregate lump sum to $60,000 is procedural in nature.

Our plain language interpretation of the 2007 amendment as procedural in nature is supported both by the fact that the lump sum provision is located within the "Procedure" article of the Act, §§ 8–43–101 to –503, C.R.S. (2009), and by the legislative history

of the amendment. The 2007 amendment to section 8–43–406 was part of Senate Bill 258, a larger bill affecting various procedures applicable to workers' compensation cases. *See* S.B. 258, 66th Gen. Assemb., 1st Sess. (2007). In introducing the bill to the Senate Committee on State, Veterans and Military Affairs, bill sponsor Senator Peter Groff stated, "Let me make clear from the outset that this bill does not affect benefit levels in any way." Hearings on S.B. 258 before the S. Comm. on State, Veterans & Military Affairs, 66th Gen. Assemb., 1st Sess. (Apr. 25, 2007). Scott Meiklejohn of the Workers' Compensation Education Association testified in support of the bill, explaining that the General Assembly had not amended the lump sum cap for nearly twenty years and that "the realities of the current economics" necessitated an increase. *Id.*[5]

Our interpretation of the lump sum provision as procedural in nature likewise conforms to applicable rules of statutory construction. First, by providing employees with more autonomy over when and how their awarded benefits are distributed, our interpretation accords with the rule that we liberally construe the Colorado Workers' Compensation Act in favor of the injured employee to effectuate its remedial and beneficent purposes. *See Williams*, 147 P.3d at 36, 39; *Davison*, 84 P.3d at 1029; *Univ. of Denver*, 138 Colo. at 509, 335 P.2d at 294.

Second, our interpretation conforms to the rule that we give considerable weight to the Director's reasonable interpretation of the Division's enabling statutes. *Anderson*, 102 P.3d at 326; *Orth*, 965 P.2d at 1254. The Director, charged with administration of the Act, § 8–1–103(3), determined that the 2007 amendment affects only the procedural method of disbursing previously awarded benefits and applies to requests for lump sum payments filed after its enactment, irrespective of the date of injury. The Director's determination was consistent with the Division's

earlier advisory, stating that the amendment is "[a]pplicable to all claims without regard to date of injury" and "[e]ffective upon signature of the Governor." We agree with the Director's reasonable interpretation of section 8–43–406 of the Division's enabling statutes because it is consistent with the plain meaning of the language the General Assembly chose to utilize in the 2007 amendment.

■ Two recent court of appeals opinions are also in accord with our interpretation. In *McBride*, the court of appeals determined that a statutory amendment subjecting an existing award of PTD or permanent partial disability benefits to garnishment for child support is procedural in nature. 107 P.3d at 977. Similarly, in *Division of Child Support Enforcement v. Industrial Claim Appeals Office*, the court of appeals held that an amendment subjecting an existing workers' compensation lump sum settlement to attachment and lien for unpaid child support is procedural. 109 P.3d 1042, 1043 (Colo.App. 2004). Where an amendment dictating who is entitled to an existing award of workers' compensation benefits is procedural, so too is an amendment altering how or when payment of an existing award of workers' compensation benefits must occur.

CIGA argues that an employee's election of a lump sum payment may cause it to pay more than it otherwise would have, and therefore any increase to the maximum aggregate lump sum available by statute is substantive in nature. We disagree. The General Assembly designed calculation of lump sum payments to equalize the parties' interests by ensuring that, on balance, a lump sum payment does not increase or decrease the total amount the employer or insurer pays to the claimant. *See* § 8–43–406(1). In any particular case, an employer or insurer may in fact pay more or less as a result of an employee electing to take a lump

---

5. The original version of Senate Bill 258 increased the aggregate to $75,000. According to Meiklejohn, "the invested parties thought [$60,-000] would be appropriate." Hearings on S.B. 258 before the S. Comm. on State, Veterans & Military Affairs, 66th Gen. Assemb., 1st Sess. (Apr. 25, 2007). Accordingly, an amendment to the bill reduced the amount to $60,000. Meikle-

john further explained to the Committee that "the reason for the lump sum is just that claimants need those moneys for their disability for whatever purposes are appropriate: often times it is for their own retraining, rehabilitation, paying off their medical bills and such, so that they can financially survive the impact from the injury." *Id.*

sum payment. On the one hand, an employee electing a lump sum payment may die before reaching her life expectancy, causing the employer or insurer to pay more via lump sum than it otherwise would have via default bi-weekly partial payments. On the other hand, if an employee simply reaches her life expectancy or lives beyond it, the employer or insurer will have paid less via lump sum than it otherwise would have via biweekly payments, due to the four-percent discount.

### 2. The 2007 Amendment Applies Prospectively

 Having determined that the lump sum provision, as amended in 2007, is procedural in nature, we turn to its applicability to awards based on injuries occurring prior to the amendment's enactment. While the substantive rights and liabilities of the parties to a workers' compensation case are determined by the statute in effect at the time of an employee's injury, procedural changes to the statute become effective during the pendency of a claim. *City of Florence*, 145 P.3d at 659–60; *McBride*, 107 P.3d at 977. In contrast to earlier amendments to the lump sum provision, the General Assembly did not include an effective date in the 2007 amendment.

CIGA argues that, because the 1991 amendment specified that it "shall take effect July 1, 1991, and shall apply to injuries occurring on or after said date," ch. 219, sec. 61, 1991 Colo. Sess. Laws 1342, the General Assembly also must have intended that the 2007 amendment apply only to injuries occurring after its enactment. Such an interpretation runs contrary to the rules of statutory construction that we interpret statutes according to their plain language, *Davison*, 84 P.3d at 1029, and that the General Assembly's failure to include particular language is a statement of legislative intent, not a mere omission, *Romer*, 956 P.2d at 576. Contrary to CIGA's argument, the effective date language in the 1991 amendment demonstrates that the General Assembly has in the past included language limiting an increase in the maximum aggregate lump sum to awards based on injuries occurring after the amendment, but chose not to include such limiting language in the 2007 amendment. This omission constitutes legislative intent that the 2007 amendment applies irrespective of the date of an employee's injury.

There is considerable confusion throughout the record with respect to whether the 2007 amendment applies prospectively or retroactively.[6] Absent legislative intent to the contrary, a statute is presumed to be prospective in its operation. § 2–4–202; *Ficarra*, 849 P.2d at 11. The General Assembly expressed no intent that the 2007 amendment apply retroactively, so we must presume that section 8–43–406 operates prospectively.

 That the General Assembly intended the 2007 amendment to operate prospectively is supported by the fact that the relevant transaction with respect to operation of the lump sum provision is the employee's request for a lump sum payment. A statute is applied prospectively if it operates on transactions that occur after its effective date; it is applied retroactively if it operates on transactions that have already occurred or rights and obligations that existed before its effective date. *Ficarra*, 849 P.2d at 11. Here, Nelson requested the additional lump sum payment after the 2007 amendment's enactment. Because the lump sum provision only functions where an employee has affirmatively chosen to elect a lump sum payment, the operative transaction is the employee's request for such payment. Applying *Ficarra*, the new $60,000 maximum aggregate operates on Nelson's request for the additional lump sum payment—a transaction occurring after the amendment's enactment. *See* 849 P.2d at 11. Accordingly, the 2007 amendment is prospective in its operation and ap-

---

**6.** Illustrating this confusion are the court of appeals' disparate interpretations of the prospective versus retroactive applicability of the 2007 amendment. The court of appeals in this case determined that the 2007 amendment is procedural and applies prospectively. Eight months later, another division of the court of appeals, purporting to apply the court of appeals' earlier decision in this case, held that the same amendment is procedural but applies retroactively. *See Navarrete v. Indus. Claim Appeals Office*, No. 09CA794, slip op. at 3, 2010 WL 326114 (Colo. App. Jan. 28, 2010) (not selected for official publication).

plies to all requests for lump sum payments made after the amendment's date of enactment, irrespective of the date of injury.

In this case, Nelson's rights and CIGA's liabilities vested on December 5, 2006, when the ALJ determined that Nelson was permanently and totally disabled and ordered CIGA to pay her PTD benefits. Neither the $26,292 lump sum payment Nelson requested and received in February 2007, nor the additional $33,708 payment to which we find Nelson is entitled, alter these rights or liabilities. Instead, the lump sum payments constitute an advance of the award of PTD benefits to which Nelson already is entitled. To account for any burden CIGA may suffer as a result of this change in the method of distribution of Nelson's award, Nelson will receive four percent less than she otherwise would have via bi-weekly partial payment. Nelson requested the additional lump sum payment five months after the General Assembly amended section 8-43-406. Because the amendment is procedural in nature and operates prospectively on requests filed subsequent to its enactment, Nelson is entitled to the additional lump sum payment of $33,708.

### E. Prior Judicial Precedent

The General Assembly is presumed to be aware of the judicial precedent in an area of law when it legislates in that area. *Vaughan v. McMinn*, 945 P.2d 404, 409 (Colo.1997). Additionally, the General Assembly is presumed to adopt the construction which prior judicial decisions have placed on particular language when such language is employed in subsequent legislation. *Id.* When a statute is amended, the judicial construction previously placed upon the statute is deemed approved by the General Assembly to the extent that provision remains unchanged. *Rauschenberger v. Radetsky*, 745 P.2d 640, 643 (Colo.1987).

CIGA argues that the Division and the court of appeals erred in failing to apply the presumption we articulated in *Vaughan* and *Rauschenberger*. Specifically, CIGA asserts that the court of appeals' decision in *Eight Thousand West*, refusing to apply the maximum aggregate lump sum prescribed by the 1971 amendment to an employee whose inju-

ry occurred prior to the amendment, precludes application of the 2007 amendment to Nelson's request for an additional lump sum payment. We disagree.

We are not bound by *Eight Thousand West* and find the opinion unpersuasive. The opinion holds that "[c]ivil liabilities already incurred may not be changed by statute unless specifically so provided by the legislature." *Eight Thousand West*, 37 Colo.App. at 374, 546 P.2d at 1282. By finding the 1971 amendment inapplicable to an employee who suffered his injury prior to the amendment, the opinion implies that amendment of the maximum aggregate lump sum available constitutes a substantive change that cannot be applied retroactively to employees whose injuries occurred prior to the amendment. However, the opinion lacks convincing legal analysis and relies on a vague and unsupported claim that a contrary construction "could create chaos in the operations of workmen's compensation insurers whose premium rates and loss reserves are computed on their potential liability inherent in the statutory scheme that was in effect upon issuance of the insurance." *Id.* at 374, 546 P.2d at 1283.

Furthermore, we find inapplicable the presumption that the General Assembly, in amending the lump sum provision in 2007, adopted the court of appeals' construction of that provision in *Eight Thousand West*. As an initial matter, the *Eight Thousand West* opinion did not construe any particular statutory language. Moreover, the General Assembly has altered the relevant statutory language since the 1971 amendment. The 1971 lump sum provision declared that "[t]he aggregate of all lump sums granted to a claimant *who has been found and declared by the director to be permanently and totally disabled* shall not exceed twenty thousand two hundred sixty-six dollars and seventy-five cents." Ch. 225, sec. 14, § 81-13-3(2), 1971 Colo. Sess. Laws 910-11 (emphasis added).

In contrast, the current statutory language requires that "[t]he aggregate of all lump sums granted to a claimant *who has been awarded compensation* shall not exceed sixty thousand dollars." § 8-43-406(2) (emphasis

added). Additionally, the 1971 amendment included an effective date, ch. 225, sec. 23, 1971 Colo. Sess. Laws 914, while the 2007 amendment did not. With these differences, the relevant statutory language does not constitute "particular language" that has "remain[ed] unchanged." *See Vaughan,* 945 P.2d at 409; *Rauschenberger,* 745 P.2d at 643. *Eight Thousand West* does not constitute a prior judicial interpretation of particular language that has remained unchanged throughout subsequent amendments, and, to the extent it is inconsistent with this opinion, we overrule it.

### III.

Accordingly, we affirm the judgment of the court of appeals.

Justice RICE concurs in part and dissents in part, and Justice COATS and Justice EID join in the concurrence and dissent.

Justice RICE, concurring in part and dissenting in part.

Because the 2007 amendment to section 8–43–406, C.R.S. (2009), constitutes a substantive change to workers' compensation award payments, I dissent from part of the majority opinion. To properly assess the amendment's effect on Nelson's claim, we must determine whether the General Assembly intended that the amendment apply to preexisting claims and whether the amendment effects a substantive or a procedural adjustment. I agree with the majority that nothing in the amendment demonstrates that the General Assembly intended retroactive application, so it should apply prospectively only. However, I respectfully disagree with the majority's conclusion that the change was merely procedural; instantly doubling the

lump sum that an insurer owes a claimant dramatically reshapes the substance of workers' compensation law. Because the amendment effected a substantive change, precedent dictates that the law at the time of the injury control. I would hold that Nelson's award should be capped by the statutory recovery limit in place at the time of her injury, not the subsequent 2007 amended sum that postdated her collection of benefits.

### I. The 2007 Amendment Applies Prospectively

Prospective legislation applies only to transactions that occur after passage, while retroactive legislation will affect transactions and obligations predating passage. *In re Estate of DeWitt,* 54 P.3d 849, 854 (Colo. 2002). The Colorado Constitution states that "[n]o ... law ... retrospective in its application ... shall be passed by the general assembly," Colo. Const. art II, § 11, but law can be "retroactive" as applied.[7] *DeWitt,* 54 P.3d at 854. Retroactive application can be constitutional if it survives this court's two-part retrospectivity test. *Id.* First, we determine whether the General Assembly intended its legislation to apply retroactively. *Id.* If and only if such a retroactive legislative intent is evident, then we ask if retroactive application would be unconstitutional because it unnecessarily impairs a vested right.[8] *Id.* at 855.

I believe that only the first step of the analysis is necessary here because there is no evidence that the General Assembly intended retroactive application. Section 2-4-202, C.R.S. (2009), states that "[a] statute is presumed to be prospective in its operation," and this court has affirmed that rule on multiple occasions. *DeWitt,* 54 P.3d at 854 ("Absent legislative intent to the contrary, a

---

7. The terms retroactive and retrospective are not synonymous here. This court employs the term retroactive to describe all legislation that "operates on transactions that have already occurred or on rights and obligations that existed before its effective date." *DeWitt,* 54 P.3d at 854. The term retrospective applies to retroactive legislation that this court deems unconstitutional. *Id.*

8. More specifically, the second step of the test asks if the legislation "either (1) impairs a vested right, or (2) creates a new obligation, imposes a

new duty, or attaches a new disability." *DeWitt,* 54 P.3d at 855. However, "a finding that a statute impairs a vested right, although significant, it is not dispositive as to retrospectivity; such a finding may be balanced against the public interest in the statute." *Id.* This second step requires much of the same analysis of vested rights and liabilities required in the procedural-versus-substantive rights determination discussed in the following section, but it is for a different purpose here.

statute is presumed to operate prospectively."); *Coffman v. State Farm Mut. Auto. Ins. Co.*, 884 P.2d 275, 279 (Colo.1994) ("Legislation is presumed to be prospective in effect absent a clear legislative intent to the contrary."); *Ficarra v. Dep't of Regulatory Agencies*, 849 P.2d 6, 11 (Colo.1993) ("[T]he retroactive application of a statute is generally disfavored by the common law...."). In short, this rule demands we find that "legislation operates prospectively unless the intent for retroactivity is clear." *City of Colorado Springs v. Powell*, 156 P.3d 461, 466 (Colo.2007).

I find no such clear intent that the 2007 Amendment apply retroactively. Nothing in section 8–43–406 even speaks to the effective date of the change, much less demonstrates an intent to apply it retroactively. When the General Assembly does not address an issue, we presume that it legislated with the prior construction in mind, which is explicitly prospective in this case. *Vaughan v. McMinn*, 945 P.2d 404, 409 (Colo.1997). The last time the General Assembly raised the lump sum payment in 1991, it commented that the amendment "shall take effect July 1, 1991, and shall apply to injuries occurring on or after said date." Ch. 219, sec. 61, 1991 Colo. Sess. Laws 1342. The court of appeals had also previously held that a change in the lump sum payment amount in a worker's compensation claim is prospective. *Eight Thousand West Corp. v. Stewart*, 37 Colo. App. 372, 372–73, 546 P.2d 1281, 1282–83 (1976). Thus, the statutory presumption reaffirmed multiple times by this court dictates that the 2007 amendment apply only prospectively, so I concur with the majority on this point.

## II. The 2007 Amendment is a Substantive Change

Given that the 2007 amendment applies only prospectively and not to transactions occurring prior to its effective date, Nelson's claim, which predated the 2007 amendment, can only succeed if the amendment adjusted procedure as opposed to effecting a substantive change. *DeWitt*, 54 P.3d at 854. "In workers' compensation cases, the substantive rights and liabilities of the parties are determined by the statute in effect at the time of a claimant's injury, while procedural changes in the statute become effective during the pendency of a claim." *City of Florence v. Pepper*, 145 P.3d 654, 660 (Colo.2006) (quoting *Am. Comp. Ins. Co. v. McBride*, 107 P.3d 973, 977 (Colo.App.2004)); *accord Colo. Comp. Ins. Auth. v. Jones*, 131 P.3d 1074, 1078 (Colo.App.2005). Thus, because Nelson's injury and award predated the amendment, the 2007 amendment would need to be deemed "procedural" in order for Nelson's post-amendment request to be during "the pendency of [her] claim." If deemed a "substantive" amendment according to our precedent, her total award would be capped by "the statute at the time of [her] injury." I believe the 2007 amendment constitutes the latter.

"[T]he distinction between substantive and remedial [or procedural] statutes lies in the fact that substantive statutes create, eliminate or modify vested rights or liabilities, while procedural statutes relate only to remedies or modes of procedure to enforce such rights or liabilities." *People v. D.K.B.*, 843 P.2d 1326, 1331 (Colo.1993); *accord DeWitt*, 54 P.3d at·854 n. 3; *Shell W. E & P, Inc. v. Dolores County Bd. of Comm'rs*, 948 P.2d 1002, 1012 (Colo.1997); *McBride*, 107 P.3d at 977. Therefore, we must first determine if a permanent total disability ("PTD") award constitutes a vested right or liability and, second, if the 2007 amendment created, eliminated, or modified that right.[9]

This court has held and the court of appeals has employed the rule that an injured employee's rights vest upon entry of an award of benefits. *See Ficarra*, 849 P.2d at 15; *Div. of Child Support Enforcement v.*

---

9. The analysis of vested rights is often done in the context of retrospectivity because, as discussed in the previous section, the second prong of that test asks if a vested right is impaired. Although the definition of a vested right is unchanged between the two, the reason for making the determination differs. On the one hand, impairing a vested right results in unconstitutional retrospective application of a law, while on the other hand a vested right determines if a statute is substantive and must apply the law in effect at the time of injury. These are similar inquiries, but can result in different conclusions as this case exemplifies.

*Indus. Claim Appeals Office,* 109 P.3d 1042, 1044 (Colo.App.2004); *McBride,* 107 P.3d at 979; *Wood v. Beatrice Foods Co.,* 813 P.2d 821, 823 (Colo.App.1991). Similarly, it follows that an employer's or insurer's liability to pay worker's compensation also vests upon entry of an award. *See Ficarra,* 849 P.2d at 15. Thus, I conclude that Nelson's right to payment vested, as did the Colorado Insurance Guaranty Association's ("CIGA") liability to pay, when the administrative law judge entered the award of PTD benefits on December 5, 2006.

The court of appeals' decision in *Eight Thousand West* informs my reasoning because it recognizes the vested rights and liabilities impacted by any change in the total lump sum payment. The *Eight Thousand West* court never reached the question of whether a similar increase in the lump sum payment was procedural or substantive; it simply determined there could be no retroactive application of a lump sum payment increase and left the issue there. *See* 37 Colo. App. at 372–74, 546 P.2d at 1282–83. Still, the court acknowledged that considerable liability existed after an award when it observed that applying a statutory change to awards predating that change "could create chaos in the operations of workmen's compensation insurers whose premium rates and loss reserves are computed on their potential liability inherent in the statutory scheme that was in effect upon issuance of the insurance." *Id.* at 374, 546 P.2d at 1283. Despite resolving the question purely on the retrospectivity prong of this analysis, *Eight Thousand West* correctly recognized the import of insurers' liability for already-entered awards.

The majority argues that the General Assembly "designed calculation of lump sum payments to equalize the parties' interests by ensuring that, on balance, a lump sum payment does not increase or decrease the total amount the employer or insurer pays to the claimant." Maj. op. at 401. The majority substantiates this statement by juxtaposing the chance that an employee will die before all installments are fully paid, thereby relieving the insurer of making all payments, against the 4% penalty for taking payment in a lump sum, which would slightly decrease

insurer liability. *Id.* These are valid reasons for the choice between a lump sum payment or an installment plan in general, but I cannot see how they justify instantly doubling the total lump sum payment an insurer may presently owe the claimant. A 100% increase in the amount immediately due as a lump sum on preexisting awards, which insurers account for upon issuing their policies, is not offset by a 4% lump sum penalty.

The majority's insistence that "[a] doubling of the maximum aggregate lump sum to which an employee is entitled does not double the employer's or insurer's liability" misses the point. Maj. op. at 400. The majority's logic fails to accurately account for the greater value of a present-day dollar over a future dollar paid decades later in an installment plan, especially when insurers compute premium rates and loss reserves on existing statutory obligations. The majority fails to recognize that, regardless of a minimal 4% penalty, the 2007 amendment makes insurers immediately liable for twice as much as initially anticipated at the time of injury, issuance of a policy, and computation of long-term financial planning and loss reserves. Such a modification of an "already vested liability," to quote the majority, maj. op. at 400, is exactly what our precedent defines as affecting a substantive right. *D.K.B.,* 843 P.2d at 1331; *DeWitt,* 54 P.3d at 854 n. 3. And any substantive right based on a vested liability is controlled by "the statute in effect at the time of the claimant's injury." *City of Florence,* 145 P.3d at 660; *Jones,* 131 P.3d at 1078; *McBride,* 107 P.3d at 977. To hold otherwise ignores years of precedent.

My conclusion accords with our precedent in *McBride* and *Division of Child Support Enforcement* as well. While both of these cases primarily review the facts as part of a retrospectivity analysis, the procedural-versus-substantive determination each made is informative. In fact, both cases highlight exactly what is a procedural change under Colorado law. The *McBride* court determined that a statutory change allowing a preexisting PTD award to be garnished for child support was procedural. 107 P.3d at 977. The court reasoned that "the statutory amendment provided a new *administrative*

remedy to satisfy McBride's preexisting child support obligation." *Id.* at 979 (emphasis added). That amendment did nothing to change the award amount due to the claimant McBride; it merely made an administrative change and redirected part of that award to satisfy child support, which the General Assembly deemed more important than personal collection of benefits. *Id.* at 977–79. *McBride* exemplifies a procedural change to how an award is paid, not a substantive change to what must be paid.

It is also important to note that the *McBride* court refused to blindly defer to the initial ruling of the Director of the Division of Workers' Compensation, holding that an agency determination need not be followed if it "misapplies or misconstrues the law." *Id.* at 980 (citing *El Paso County Bd. of Equalization,* 850 P.2d at 704–05). The court of appeals overruled the Director's opinion regarding which claims the statutory amendment affected. *Id.* Here, the Director's opinion similarly misconstrued the law by applying the 2007 amendment retroactively and to already-vested rights in derogation of our precedent, so, as in *McBride,* we need not defer to it.

Turning to *Division of Child Support Enforcement,* that case also demonstrates a procedural change. 109 P.3d at 1043. There, a statutory amendment allowed the child support enforcement unit to file administrative liens on permanent partial disability awards (prior to the amendment only total disability awards were subject to garnishment). *Id.* The court endorsed the reasoning in *McBride* that such changes were procedural because attaching a lien merely changed the method for payment of benefits. *Id.* It noted that "[t]he *McBride* division concluded that the statutory amendment did not impair the claimant's substantive rights because he received *the same amount of benefits as before.*" *Id.* at 1043 (emphasis added). Therefore, both *Division of Child Support Enforcement* and *McBride* implicitly reached the same conclusion that I reach today: a change in the *amount* of benefits presently due to a claimant affects substantive rights.

Finally, the conclusion that the 2007 amendment is substantive makes common sense as well. When or how or to whom an award is paid is an administrative adjustment to the structure of a payment plan; the present-day value of the award an employer or insurer must pay affects the very essence of the award. For instance, if the General Assembly decided weekly payments should supplant the current biweekly payment system, then that would be a procedural change to the structure of payment. But when the General Assembly doubled the amount that could be instantly awarded as a lump sum, that created a substantive change that affected both the employee's right to payment and the insurer's obligation to pay. Quite simply, the amount paid is far more serious than how it is paid. Thus, a change to the total possible lump sum payment modifies vested rights and liabilities, and it is a substantive change.

## III. Conclusion

For these reasons, I would hold that the 2007 amendment represents a substantive change to section 8–43–406. Because the amendment was a substantive change, the statute in effect at the time of the injury controls Nelson's claim. *City of Florence,* 145 P.3d at 660. That statute capped the total possible lump sum payment at $26,292, which Nelson received in full in February 2007. Ch. 62, sec. 1, § 8–43–406(2), 1990 Colo. Sess. Laws 515. Thus, Nelson's claim was no longer pending, and the statutory change later in 2007 affected neither her claim nor the great many others that predated the amendment. All of those predating claimants are still entitled to the same total benefit package awarded after their injury, but they must collect that total according to the law at the time of injury. To hold otherwise would retroactively subject insurers like CIGA to considerable liability for past transactions when the statutory presumption and our precedent indicate that the amendment applies prospectively only. § 2–4–202; *De-Witt,* 54 P.3d at 854. The 2007 amendment was a substantive, prospective change that affects only awards vesting after its passage. Therefore, I would deny Nelson's claim for

additional benefits, and I respectfully dissent from part of the majority opinion.

