2013 COA 153

Tracey **LAWLESS**, Robert Hogan, and Terrilynn Mills, Plaintiffs–Appellants,

v.

**STANDARD INSURANCE COMPANY;** Colorado Public Employees' Retirement Association; Colorado Public Employees' Retirement Association Board of Trustees; and Carole Wright, in her official capacity as Trustee; Maryann Motza, in her official capacity as Trustee; and Rick Larson, in his official capacity as Trustee, Defendants–Appellees.

**Court of Appeals No. 12CA0567**

Colorado Court of Appeals,
Div. III.

Announced November 21, 2013

McDermott Law, LLC, Shawn E. McDermott, Heather L. Petitmermet, Denver, Colorado, for Plaintiffs–Appellants.

Swift & Bramer, LLP, Clinton P. Swift, Windsor, Colorado; Smith %CO von Schleicher + Associates, Warren von Schleicher, Chicago, Illinois, for Defendant–Appellee Standard Insurance Company.

Gregory W. Smith, Adam L. Franklin, Kimberly K. Riccardi, Denver, Colorado; Berenbaum Weinshienk PC, Gary M. Kramer, Eugene M. Sprague, James L. Wooll, Denver, Colorado, for Defendants–Appellees

§ 24–51–1105, C.R.S.2013.

Colorado Public Employees' Retirement Association, Colorado Public Employees' Retirement Association Board of Trustees, Carole Wright, Maryann Motza, and Rick Larson.

### Opinion by JUDGE BOORAS

¶ 1 This is an appeal from the district court's review of challenges to state agency action. Consolidated plaintiffs Tracey Lawless, Robert Hogan, and Terrilynn Mills appeal the judgments in favor of defendants, Standard Insurance Company (Standard), as well as the Colorado Public Employees' Retirement Association (PERA), its Board of Trustees, and trustees Carole Wright, Maryann Motza, and Rick Larson (collectively the PERA defendants). We affirm.

### I. Background

¶ 2 This consolidated appeal arises from the denials of plaintiffs' applications for benefits under the disability program established by PERA. § 24–51–701, C.R.S.2013. Under this program, plaintiffs were denied benefits because Standard found that although they were medically incapable of performing the essential functions of their own job, they were capable of earning seventy-five percent of their predisability earnings in another job. Plaintiffs contend that, in implementing the disability program, PERA promulgated an administrative rule and executed an insurance policy through Standard that conflicted with the statutory requirements of section 24–51–702(1), C.R.S.2013.

### A. The PERA Disability Program

¶ 3 PERA is the instrumentality of the state of Colorado responsible for administering retirement and disability benefits for eligible state employees. *See* §§ 24–51–201, –202, C.R.S.2013. The General Assembly repealed and reenacted the PERA statutes in 1997, effective January 1, 1999, to require that PERA provide both short-term disability and disability retirement benefits to eligible state employees. *See* § 24–51–702(1)(a)–(b), C.R.S.2013. The disability statute also requires PERA to contract with a third party to administer the disability program. § 24–51–703, C.R.S.2013. Standard, the disability

program administrator, insures the short-term disability benefits that PERA provides to its members.

¶ 4 Section 702(1) states as follows:

(1) The association shall provide for two types of disability programs for disabilities incurred on or before termination of employment:

(a) **Short-term disability.** A member who is found by the disability program administrator to be *mentally or physically incapacitated from performance of the essential functions of the member's job* with reasonable accommodation as required by federal law, *but who is not totally and permanently incapacitated from regular and substantial gainful employment,* shall be provided with reasonable income replacement, or rehabilitation or retraining services, or a combination thereof, under a program provided by the disability program administrator for a period specified in the rules adopted by the board. The cost of the program shall be funded by the association.

(b) **Disability retirement.** A member who is found by the disability program administrator to be totally and permanently mentally or physically incapacitated from regular and substantial gainful employment as of the date of termination of employment shall be placed on disability retirement, and the association shall provide to such person a benefit as calculated in section 24–51–704. The benefit shall be paid directly by the association. A member of the judicial division shall also be eligible for disability retirement upon the entry of an order of retirement pursuant to section 23 of article VI of the state constitution for a disability interfering with the performance of the member's duties that is, or is likely to become, of a permanent nature.

(Emphasis added.)

¶ 5 In section 703, the General Assembly expressly delegated authority to PERA to promulgate related rules and regulations:

The association shall contract with a disability program administrator to determine disability, to provide short-term disability

insurance coverage, and to administer the short-term disability program. A contract shall conform to rules adopted by the board, which rules shall include but not be limited to standards relating to the determination of disability. . . .

¶ 6 PERA enacted administrative rules simultaneously with the General Assembly's amendments to the PERA statute and in accordance with section 703. *See* PERA Rules 7.10 to 7.70, 8 Code Colo. Regs. 1502–1. At issue is PERA Rule 7.45, entitled "Medical Standard for Short–Term Disability," which provides in relevant part:

> For short-term disability, the applicant, because of the applicant's medical condition, *must not be able to perform the essential functions of the applicant's job* with reasonable accommodation as required by federal law.
>
> . . . .
>
> E. *The applicant is not disabled for this purpose if the applicant is medically able to perform any job,* based on the applicant's existing education, training, and experience, *that earns at least 75 percent of the* applicant's predisability earnings from PERA-covered employment as defined in Rule 7.50(B)(1), whether or not the applicant does so.

(Emphasis added.)

### B. Proceedings Below

¶ 7 Plaintiffs commenced their respective actions contending that PERA Rule 7.45(E) and Standard's disability insurance policy are inconsistent with section 702(1). Plaintiffs argued that although section 702(1)(a) provides that members who are incapable of performing their jobs are entitled to short-term disability benefits, Rule 7.45(E) and the insurance policy do not provide benefits to this class of people. In claims one, two, and three, as relevant here, each plaintiff sought injunctive and declaratory relief, requested reformation of the insurance policy, and alleged civil rights violations based on the denial of benefits.

1. These claims, which were filed against Standard Insurance alone, were for breach of contract, bad faith breach of contract, violation of

¶ 8 On January 4, 2012, in separate rulings in each of the consolidated cases, the district court upheld the validity of PERA Rule 7.45(E) and the short-term insurance policy. The court first determined that section 702(1) is ambiguous, thus, it invoked the rules of statutory construction. The district court concluded that PERA had been given broad rulemaking authority and its interpretation of the statute was reasonable. The court entered summary judgment against plaintiffs for claims one, two, and three, but denied summary judgment as to plaintiffs' fourth, fifth, seventh, and eighth claims.[1]

¶ 9 Although the January 4, 2012, rulings did not resolve all of the pending issues, entries of final judgments under C.R.C.P. 54(b) were directed in each of the three consolidated cases. This appeal followed.

### II. Discussion

¶ 10 On appeal, plaintiffs contend that Rule 7.45(E) and the Standard insurance policy are inconsistent with the plain meaning of section 702(1). They assert that the statute requires PERA to provide short-term disability benefits to members who are incapable of performing their own jobs, but are *capable* of performing "regular and substantial gainful employment." Plaintiffs argue that Rule 7.45(E) and the policy, in contrast, only provide benefits to members who are incapable of performing their own jobs, and are *incapable* of performing "any job" earning "at least 75 percent of the applicant's predisability earnings." Thus, according to plaintiffs, the "any job" requirement in Rule 7.45(E) is inconsistent with section 702(1)(a). We disagree.

### A. Summary Judgment Rulings

¶ 11 In its January 4, 2012, orders, the district court initially found that section 702(1)(a) was ambiguous:

> In providing a framework to guide PERA in devising a short-term disability program, the statute states in part that someone who is unable to perform the essential functions of her job, "shall be

the Colorado Consumer Protection Act, and unreasonable delay of insurance benefits.

provided with reasonable income replacement, or rehabilitation or retraining services, or a combination thereof, under a program provided by the disability program administrator for a period specified in the rules adopted by the board." This phrase could be read to require that a person so qualified receive some benefit for at least a brief period of time, or it could be read to give PERA broad discretion to decide when, how, and for how long—including for no time at all—someone should receive [short-term disability] benefits.

¶ 12 The court therefore invoked other rules of statutory construction before concluding that Rule 7.45(E) is consistent with the legislative intent:

The legislature's goal, as evident in the hearings, was to create a new category of people who are unable to perform their own job but capable of returning to the workforce.... When read in conjunction with section 703, it follows that the legislature intended to give PERA broad discretion in devising an STD program. The statutes provide a basic framework, but leave the details of the STD program to PERA, including: defining disability; allowing PERA to provide income replacement, or rehabilitation services, or retraining services when someone is disabled; and determining when benefits should terminate under the short-term disability plan.

¶ 13 Also, the district court noted that the legislature's decision not to modify sections 702 or 703 when it modified section 701 in 2009 is further evidence that PERA's interpretation is reasonable. It ultimately upheld Rule 7.45(E) and the insurance policy:

[B]ecause the goal is to assist PERA members in returning to the workforce, and because PERA was given broad discretion in not only determining who is disabled, but also how long benefits should last, and when they should terminate, it is also reasonable to interpret the statute the way PERA did in Rule 7.45.E.... I do not find 7.45.E to be inconsistent with the clear language of the statute or the legislative intent.

### B. Standards of Review and Legal Authority

¶ 14 We review an order granting summary judgment de novo. *Martini v. Smith,* 42 P.3d 629, 632 (Colo.2002). Likewise, we review questions of statutory construction de novo. *Mounkes v. Indus. Claim Appeals Office,* 251 P.3d 485, 487 (Colo.App.2010); *see Klinger v. Adams Cnty. Sch. Dist. No. 50,* 130 P.3d 1027, 1031 (Colo.2006).

¶ 15 "Our primary objective in construing a statute is to effectuate the intent of the General Assembly." *Specialty Rests. Corp. v. Nelson,* 231 P.3d 393, 397 (Colo.2010). We interpret the statute according to its plain and ordinary meaning if the statutory language is not ambiguous. *Id.* We may look to other aids in construction if the statute is reasonably susceptible of multiple interpretations. *Id.* (citing *Williams v. Kunau,* 147 P.3d 33, 36 (Colo.2006)).

¶ 16 We defer to the interpretation of a statute adopted by the agency charged with its administration unless the interpretation is inconsistent with the statute's clear language or legislative intent. *Colo. Consumer Health Initiative v. Colo. Bd. of Health,* 240 P.3d 525, 528 (Colo.App.2010). Although an administrative agency's construction of a statute should be given deference, courts have a duty to invalidate a regulation that is contrary to the plain meaning of the statute. *Colo. Dep't of Revenue v. Garner,* 66 P.3d 106, 109 (Colo.2003); *Colo. Ethics Watch v. Clear the Bench Colo.,* 277 P.3d 931, 937 (Colo.App.2012); *Colo. Consumer Health Initiative,* 240 P.3d at 528.

### C. Analysis

¶ 17 Plaintiffs argue on appeal that the district court erred in finding that Rule 7.45(E) and the insurance policy do not violate section 702(1). They assert that PERA's administrative rule is inconsistent with the plain language of the statute because the plain language requires some sort of short-term disability benefits for members who are unable to perform their jobs. Additionally, according to plaintiffs, the General Assembly did not grant PERA rulemaking authority as

to which categories of members are entitled to such benefits.

¶ 18 PERA responded that Rule 7.45(E) and the insurance policy are consistent with section 702(1). PERA asserts that it did not exceed its authority by implementing Rule 7.45(E) in light of the deference section 703 expressly conferred. Also, PERA contends that plaintiffs have not demonstrated that Rule 7.45(E) and the insurance policy are contrary to the statutory scheme or legislative intent.

### 1. Statutory Intent

¶ 19 We must first consider whether PERA acted in a manner contrary to statutory requirements when it implemented a rule stating that members who cannot perform their jobs are entitled to benefits only if they are also unable to earn seventy-five percent of their predisability earnings. *McCool v. Sears,* 186 P.3d 147, 151 (Colo.App.2008) ("An agency regulation or rule may not modify or contravene an existing statute, and any regulation that is inconsistent with or contrary to a statute is void.").

¶ 20 In section 702(1)(a), the General Assembly directs PERA to provide for two "types" of disability programs. However, it is unclear whether the language that follows was intended to be a statutory requirement as to which eligible members will receive benefits (as plaintiffs contend) or whether it simply acts as a framework within which PERA has discretion to develop specific rules (as PERA contends). If subsection (a) acts as a statutory requirement, Rule 7.45(E) is inconsistent with the mandate because it does not necessarily provide benefits for members who are unable to perform their own jobs. Alternatively, if subsection (a) merely acts as a framework for the short-term disability program, Rule 7.45(E) is within PERA's authority, and is consistent with the statute.

¶ 21 "Ambiguity may arise either from the meaning of particular words or 'from the general scope and meaning of a statute when all its provisions are examined.'" *State v. Hutton,* 796 N.W.2d 898, 904 (Iowa 2011) (quoting *State v. Spencer,* 737 N.W.2d 124, 129 (Iowa 2007)); *see also S. Ute Indian Tribe v. King Consol. Ditch Co.,* 250 P.3d 1226, 1244 (Colo.2011) (Rice, J., dissenting) (discussing ambiguity created by the structure of the statute at issue). Here, the use of the word "shall," suggesting a mandatory benefit, is in tension with the provisions for "reasonable" income replacement, rehabilitation, or retraining, or a combination of benefits under a program that conforms to rules adopted by the PERA Board, suggesting a framework for agency discretion. This tension results in ambiguity about the scope and meaning of the statutory language. *See Sperry v. Field,* 205 P.3d 365, 368 (Colo.2009) (statute was deemed ambiguous because its language was in tension with unambiguous use of the same term in similar statutes).

¶ 22 Because reasonable minds could differ about the intended scope of section 702(1)(a), we conclude, like the district court, that the statute is ambiguous and look to extrinsic aids to construe the statute.

### 2. Legislative History

¶ 23 Prior to the enactment of section 702(1)(a), a state employee was eligible to draw disability retirement pay if the employee was unable to perform the duties of his or her job. A primary goal of the legislation that instituted the short-term disability program was to eliminate the situation where a worker was unable to perform the duties of his or her job, but could draw disability retirement pay even if the worker was capable of "substantial and gainful employment" doing a different job. As described by Representative Anderson, one of the bill's primary sponsors, testifying before the House State Affairs Committee, "Currently ... [an employee] could be receiving the disability payments and go out and get another job. We want to discontinue that. We want short-term disability so that that's just what it is, for the time you're disabled." *Hearing on H.B. 97–1082 Before the H. Comm. On State Affairs,* 61st Leg., 1st Reg. Sess. (Colo. Jan. 21, 1997).

¶ 24 Thus, it appears that section 702(1)(a) made available short-term disability benefits for an employee who is "disabled" to the extent that the employee cannot perform the

essential functions of his or her job, but who is not "totally and permanently incapacitated from regular and substantial gainful employment." However, the provision for short-term benefits was subject to limits as to amount and duration, to be determined by PERA.

¶ 25 Section 702(1)(a) provides for "reasonable" income replacement for a period specified in rules adopted by the PERA board. Additionally, section 703 provides for rules to be adopted by the PERA board, which include but are not limited to standards relating to the determination of disability, adjustment, or termination of payments based on the mental or physical condition of the program participant, and the change of status from short-term disability to disability retirement (and vice versa). Because the statute contemplates "retraining services" as a short-term disability benefit option, it appears that being able to once again perform the essential functions of the member's specific job was not necessarily the ultimate goal of the short-term disability program.

¶ 26 Thus, in our view, the General Assembly intended in section 702(1) simply to create a new category of potential disability benefits for short-term disability to provide PERA with a framework for implementation of a short-term disability program within that category pursuant to section 703. *See Hawes v. Colo. Div. of Ins.*, 65 P.3d 1008, 1016 (Colo.2003) ("[T]he General Assembly cannot delegate explicitly for every contingency.... [T]herefore, it is ... well-established that agencies possess implied and incidental powers filling the interstices between express powers to effectuate their mandates."); *Martinez v. Colo. Dep't of Human Servs.*, 97 P.3d 152, 157 (Colo.App.2003) ("The General Assembly need not adopt a specific formula to guide agency rulemaking if the agency can find general guidance in the purposes and overall scheme of an act.").

### 3. Implementation under Rule 7.45(E)

¶ 27 The General Assembly explicitly delegated authority to PERA to administer the short-term disability program through regulations. § 24–51–702(1)(a) (stating that the association shall provide for two types of disability programs, and that eligible members shall receive reasonable benefits under a program provided by the contract administrator); § 24–51–703 (providing that the association shall contract with an administrator to determine disability and adopt rules, including standards relating to the determination of disability); *see Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation.").

¶ 28 Under the authority delegated to it, PERA determined that an employee would not be considered "disabled" for the purpose of short-term disability benefit eligibility if the employee was medically able to perform any job, based on the employee's existing education, training, and experience, that would earn the employee at least seventy-five percent of the employee's predisability earnings. Additionally, because section 702(1)(a) provides for a "reasonable" short-term disability benefit for a period to be determined by PERA, it is reasonable to provide for no benefit in the circumstance where an employee is medically capable of earning substantially the same income. If some benefit were to be required without regard to an employee's ability to earn income, an employee could conceivably collect disability benefits while making more income at a temporary job than the employee was earning in the employee's regular job.

¶ 29 The General Assembly created short-term disability benefits to encourage employees to return to work if they could become capable of doing so instead of continuing to collect disability benefits while not working. Senator Wells, another bill sponsor, testified before the Senate State Affairs Committee:

> Present law says if you are physically or mentally unable to do the job that you were doing at the time you were injured, then you get a disability retirement. What the bill provides here is if you are unable to do it but you can be gainfully and substantially employed, in other words you can get a full-time job doing something

else, then what we're going to do is just put you on a short-term disability and then allow for payment for the reeducation or payment for the retraining or whatever is appropriate in the given program.

*Hearings on H.B. 1082 before the S. Comm. on State Affairs*, 61st Gen. Assembly, 1st Sess. (Colo. April 15, 1997). Thus, short-term disability benefits were intended to apply until an employee was able to be gainfully and substantially employed, even if that meant returning to a job "doing something else." PERA's "75 percent rule" comports with this purpose.

¶ 30 The General Assembly's failure to repeal or amend the short-term disability provisions further suggests that Rule 7.45(E) and the policy are not contrary to the legislative intent. *Hewlett–Packard Co. v. State, Dep't of Revenue*, 749 P.2d 400, 406 (Colo. 1988) ("When a legislature has reenacted or amended a statute, a failure to repeal the agency's interpretation is persuasive evidence that the administrative interpretation was intended by the legislature.").

### III. Conclusion

· ¶ 31 We conclude that Rule 7.45(E) and the insurance policy are not contrary to section 702(1)(a). Because PERA's interpretation and implementation of the statute are reasonable, the district court correctly held that Rule 7.45(E) and the policy comply with the statutory requirements. We affirm the orders entering summary judgment against plaintiffs on claims one, two, and three of their respective pleadings.

¶ 32·The judgments are affirmed.

JUDGE DAILEY and JUDGE FURMAN concur.