COLORADO COURT OF APPEALS 2016COA146

Court of Appeals No. 15CA1589
Douglas County District Court No. 14CV31174
Honorable Paul A. King, Judge

_____

Ronald Berges, Beth Ballen, Stephanie Van Voorst, Jody Curtin, Nathan Mohr, Lynn Robinson, and Mark Bauman,

Plaintiffs-Appellants,

v.

County Court of Douglas County and Honorable Monica J. Gomez,

Defendants-Appellees.

_____

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE NAVARRO
Furman and Miller, JJ., concur

Announced October 6, 2016

_____

Lindquist & Vennum LLP, John A. Chanin, Patrick G. Compton, Denver, Colorado, for Plaintiffs-Appellants

Eytan Nielsen LLC, Iris Eytan, Denver, Colorado, for Plaintiff-Appellant Ronald Berges

Recht Kornfeld, P.C., Richard Kornfeld, Denver, Colorado, for Plaintiff-Appellant Beth Ballen

Denis Lane, Jr., Colorado Springs, Colorado, for Plaintiff-Appellant Stephanie Van Voorst

Greenberg Traurig, LLP, John Voorhees, Denver, Colorado, for Plaintiff-Appellant Nathan Mohr

Shufflebarger Lambrone & Clark LLC, Jeremy Shufflebarger, Fort Collins, Colorado, for Plaintiff-Appellant Lynn Robinson

Foster Graham Milstein & Calisher, LLP, Gary Lozow, Denver, Colorado, for Plaintiff-Appellant Mark Bauman

Cynthia H. Coffman, Attorney General, David C. Blake, Chief Deputy Attorney General, Matthew D. Grove, Assistant Solicitor General, Denver, Colorado, for Defendants-Appellees

¶ 1     This appeal requires us to examine the interplay between two sections of article 3 of title 19 (the Children's Code).  Section 19-3-206, C.R.S. 2016, vests county attorneys with exclusive authority to represent the "petitioner" in all "proceedings" brought under article 3, which is entitled "Dependency and Neglect." Section 19-3-304, C.R.S. 2016, requires certain people (e.g., doctors and school officials) to report suspected child abuse or neglect; these people are often called "mandatory reporters."  A mandatory reporter who willfully violates this duty to report commits a misdemeanor.

¶ 2     The question is: Does section 19-3-206 strip *district attorneys* of their authority to prosecute mandatory reporters for the misdemeanor offense described in section 19-3-304?  We conclude that the answer is "no" because section 19-3-304 does not set forth a proceeding under article 3; it simply defines an offense.  And criminal prosecutions of that offense do not constitute article 3 proceedings.  Accordingly, we affirm the district court's judgment denying relief under C.R.C.P. 106(a)(4) to plaintiffs Ronald Berges, Beth Ballen, Stephanie Van Voorst, Jody Curtin, Nathan Mohr, Lynn Robinson, and Mark Bauman.

## I. Factual and Procedural History

¶ 3     Plaintiffs are medical doctors, clinical social workers, and health care professionals facing criminal charges in Douglas County Court for violating section 19-3-304.  The charges were filed by a detective in the Douglas County Sheriff's Office.  *See* Crim. P. 4.1(c)(3).

¶ 4     When the district attorney assumed the prosecution of the criminal cases, plaintiffs moved to dismiss the charges, arguing that the district attorney lacked authority to prosecute the charges in light of section 19-3-206.  The county court denied the motions, concluding that "a *proceeding brought under Article 3 of the Children's Code* is limited to proceedings brought in Dependency and Neglect actions, not cases involving mandatory reporters."

¶ 5     Plaintiffs then filed a complaint pursuant to Rule 106(a)(4) in the district court, seeking review of the county court's order along with a stay and dismissal of the criminal proceedings.  Plaintiffs asserted that the county court's determination was an abuse of discretion resulting from an incorrect interpretation of the law.  The district court denied all relief, upholding the county court's determination and reiterating that "the mandate of C.R.S.

2

§ 19-3-206 does not apply to criminal prosecutions of failures-to-report." This appeal followed.

## II.     Standard of Review

¶ 6     In a Rule 106(a)(4) proceeding,[1] the district court's scope of review is limited to determining whether the lower governmental or judicial body exceeded its jurisdiction or abused its discretion. C.R.C.P. 106(a)(4); *Walker v. Arries*, 908 P.2d 1180, 1182 (Colo. App. 1995). Because we are in the same position as the district court, we review the district court's decision de novo and assess whether the county court exceeded its jurisdiction or abused its discretion. *See Roalstad v. City of Lafayette*, 2015 COA 146, ¶ 13. Misinterpretation of the law may constitute an abuse of discretion. *Griff v. City of Grand Junction*, 262 P.3d 906, 909 (Colo. App. 2010). We review de novo questions of statutory interpretation. *Roalstad,* ¶ 10; *see People v. Diaz*, 2015 CO 28, ¶ 9.

---

[1] The Attorney General, representing the county court, conceded at oral argument that an action under C.R.C.P. 106(a)(4) was an appropriate avenue for the district court's review of the county court's decision here.

## III.     Analysis

¶ 7     Plaintiffs contend that section 19-3-206 vests county attorneys with exclusive authority to prosecute mandatory reporters for criminal violations of section 19-3-304 because such prosecutions are proceedings brought under article 3.  Plaintiffs thus present a question of statutory interpretation.

¶ 8     The primary goal of statutory interpretation is to ascertain and give effect to the legislature's intent.  *St. Vrain Valley Sch. Dist. RE-1J v. A.R.L.*, 2014 CO 33, ¶ 10.  To determine the plain meaning of a statute, "[t]he language at issue must be read in the context of the statute as a whole and the context of the entire statutory scheme."  *Jefferson Cty. Bd. of Equalization v. Gerganoff*, 241 P.3d 932, 935 (Colo. 2010).  Our interpretation should give consistent, harmonious, and sensible effect to all parts of a statute.  *Id.*; *see also Lewis v. Taylor*, 2016 CO 48, ¶ 20 ("In evaluating whether a statute is ambiguous, we do not read its words or phrases in isolation, but instead read them in context and in a manner that gives effect to the statute as a whole.").  In particular, "[t]he sections of the Children's Code must be read together to effectuate the legislative intent and to give consistent, harmonious, and sensible

effect to all their parts." *People In Interest of E.M.*, 2016 COA 38M, ¶ 19 (*cert. granted* Aug. 1, 2016).

¶ 9 Section 19-3-206 provides: "In all proceedings brought under this article, the petitioner shall be represented by a county attorney, special county attorney, or city attorney of a city and county." Section 19-3-304 describes a mandatory reporter and requires a mandatory reporter who has reasonable cause to know or suspect that a child has been subjected to abuse or neglect to report such fact to the county department, local law enforcement agency, or the child abuse hotline. This section closes by stating that any person who willfully violates the duty to report "[c]ommits a class 3 misdemeanor and shall be punished as provided in section 18-1.3-501, C.R.S.," and "[s]hall be liable for damages proximately caused thereby." § 19-3-304(4)(a)-(b).

¶ 10 Examining the words and phrases of section 19-3-206 "one-by-one," plaintiffs maintain that the statute precludes a district attorney from prosecuting a mandatory reporter. A contrary interpretation, plaintiffs argue, would fail to give each word its commonly accepted meaning (namely "all," "proceedings," "shall," and "petitioner") and would render some of the words meaningless

5

(namely "all"). We disagree because we cannot read statutory language in isolation from its context. *See Lewis*, ¶ 20.

¶ 11     We begin by recognizing that a district attorney is ordinarily vested with authority to prosecute all violations of law that occur in his or her judicial district. *Harris v. Jefferson Cty. Court*, 808 P.2d 364, 365 (Colo. App. 1991); *see* § 16-5-205, C.R.S. 2016; § 20-1-102, C.R.S. 2016; *People v. Taylor*, 732 P.2d 1172, 1178 (Colo. 1987) ("These constitutional and statutory provisions relating to the office of the district attorney clearly demonstrate that the district attorney is vested with authority to initiate criminal prosecutions for crimes committed within the geographical boundaries of the judicial district served by the district attorney."). "However, when the General Assembly authorizes a different body to prosecute a particular type of action, then the district attorney is without authority to act." *Harris*, 808 P.2d at 365.

¶ 12     So, did the General Assembly remove a district attorney's authority to prosecute mandatory reporters for violating section 19-3-304 when it required a county attorney to represent the petitioner in "all proceedings" brought under article 3? § 19-3-206. For four reasons, we conclude that the answer is "no."

¶ 13    First, the statutory scheme as a whole makes clear that the "proceedings" to which section 19-3-206 refers are not criminal prosecutions but the civil proceedings described in detail throughout article 3.  The term "proceeding" is not defined in article 3 or the Children's Code generally, but plaintiffs recognize that the ordinary meaning of the term is "[t]he business conducted by a court or other official body."  *Black's Law Dictionary* 1398 (10th ed. 2014).  In section 19-3-206, however, the ordinary meaning of proceeding is limited to those court actions brought by a "petitioner."  "Petitioner" is not defined by the relevant statutes either, but its ordinary meaning is "[a] party who presents a petition to a court or other official body, esp. when seeking relief on appeal." *Black's Law Dictionary* at 1329.  Thus, to understand what constitutes a proceeding and a petitioner under article 3, we must explore what constitutes a petition under article 3.  Article 3 describes two types of petitions: a petition in dependency and neglect (*see* § 19-3-502, C.R.S. 2016) and a petition to reinstate the parent-child legal relationship (*see* § 19-3-612, C.R.S. 2016).

¶ 14    Petitions in dependency and neglect arise from reports of known or suspected child abuse.  § 19-3-501(2)(a), C.R.S. 2016.

The resulting court proceedings focus on protecting a child's best interests while avoiding unnecessary out-of-family placement and respecting parental rights (for example, through provision of appropriate services and treatment plans). §§ 19-3-501, -505, -507, C.R.S. 2016; *People in Interest of J.G.*, 2016 CO 39, ¶ 24; *see People in Interest of E.M.*, ¶ 12 ("A dependency and neglect case focuses on securing safety and protection for children through state intervention by correcting, when possible, the problems that endanger them so that they can remain in (or return to) their homes."). "It is not the State's objective, when acting on a petition for dependency and neglect, to punish the persons responsible for the conduct involving the child." *L.G. v. People*, 890 P.2d 647, 655 (Colo. 1995).

¶ 15 Petitions to reinstate the parent-child legal relationship arise from a prior dependency or neglect adjudication; they rely on the juvenile court's continuing jurisdiction over a dependent or neglected child. § 19-3-612(2); *see* § 19-3-205(1), C.R.S. 2016; *People in Interest of E.M.*, ¶ 20 ("[T]he . . . court presiding over the dependency and neglect case maintains continuing, exclusive jurisdiction over the adjudicated child, and in most circumstances

his or her parents, as long as the case continues."). These petitions also focus on the child's best interest and family stability. § 19-3-612(1) ("The purpose of this section is to address the problem of children who linger in the child welfare system by giving them a second chance at achieving permanency with their rehabilitated former parent.").

¶ 16 The other provisions and procedures of article 3 are tailored to these two types of petitions. *See, e.g.*, §§ 19-3-201, -202, -203, -205, -208, -209, -212, C.R.S. 2016. In particular, section 19-3-505, C.R.S. 2016, authorizes an adjudicatory hearing to address a petition alleging dependency and neglect. Giving consistent, harmonious, and sensible effect to all parts of article 3 reveals, therefore, that section 19-3-206 refers to those civil proceedings initiated by (or supplementary to) petitions in dependency and neglect or petitions to reinstate the parent-child legal relationship.

¶ 17 Second, section 19-3-304 does not come within the ambit of section 19-3-206's reference to "proceedings" because, unlike the sections of article 3 discussed above, section 19-3-304 does not describe a proceeding. It does not set forth procedures for

conducting court business. As discussed, the plain language of section 19-3-304 simply requires mandatory reporters to report suspected child abuse or neglect and provides that a willful violation of this duty is an offense subject to punishment under section 18-1.3-501, C.R.S. 2016, of the Colorado Criminal Code (title 18). Contrary to plaintiffs' view, the fact that this offense is defined in the Children's Code, rather than in the Criminal Code, does not meaningfully distinguish it from any other offense or transform a criminal prosecution of this offense into an article 3 proceeding. *See* § 18-1-103(1), C.R.S. 2016 (Absent exceptions inapplicable here, "the provisions of this [criminal] code govern the construction of and punishment for *any offense defined in any statute of this state, whether in this title or elsewhere*[.]") (emphasis added).

¶ 18 Third, in conflict with plaintiffs' contention that a criminal prosecution can constitute an article 3 proceeding, article 3 itself draws a distinction between a proceeding under that article and a criminal prosecution. Section 19-3-207(1), C.R.S. 2016, sets forth a process whereby evidence obtained in an article 3 proceeding may

be deemed inadmissible in a criminal prosecution arising from the same facts:

> Upon the request of the county attorney, special county attorney, or the city attorney of a city and county, the court shall set a hearing to determine the admissibility in *a subsequent criminal proceeding arising from the same episode* of information derived directly from the testimony obtained pursuant to compulsory process in *a proceeding under this article.* The district attorney of the judicial district in which the matter is being heard shall be given five days' written notice of the hearing by the clerk of the court. Such hearing shall be held in camera, and the district attorney shall have the right to appear at the hearing and to object to the entry of the order holding such information inadmissible. . . . The provisions of this subsection (1) shall not be construed to prevent any law enforcement officer from independently producing or obtaining the same or similar facts, information, or evidence for use in *any criminal prosecution.*

(Emphasis added.)

¶ 19    Our supreme court read section 19-3-207 *in pari materia* with section 19-3-206 in *H.B. v. Lake County District Court,* 819 P.2d 499 (Colo. 1991). The court construed the statutes to preclude a district attorney from acting as a special county attorney in article 3 proceedings. The court explained:

11

> Interpreting section 19-3-206 to allow the
> district attorney to represent the Department
> in article 3 proceedings would lead to the
> absurd result of having the district attorney, in
> his role of special county attorney, argue that
> information is inadmissible, and then object to
> his own arguments [per section 19-3-207].

*Id.* at 502. The same logic applies here. Interpreting section 19-3-206 to require the county attorney to bring a criminal prosecution could lead to the absurd result of the county attorney, in his or her role as prosecutor, arguing that evidence is admissible in a criminal prosecution and objecting to those arguments in the related dependency and neglect proceeding. The statutes are better understood as authorizing county attorneys to bring the civil petitions articulated in article 3 while preserving the district attorneys' authority to bring criminal prosecutions based on the same or related facts. After all, a county attorney is ordinarily tasked with representing the county in civil matters (including in dependency and neglect actions), not bringing criminal actions. *See County of Adams v. Hibbard*, 918 P.2d 212, 219 (Colo. 1996); *see also* § 19-1-103(31.5), C.R.S. 2016; § 30-11-118, C.R.S. 2016; *Medberry v. People*, 107 Colo. 15, 19, 108 P.2d 243, 245 (1940) (A county attorney "has no part whatsoever in the initiation or conduct

of ordinary criminal proceedings which, in Colorado, are prosecuted by the district attorney in the name of the people of the state and not of the county[.]"), *overruled on other grounds as recognized by Petition of Griffin*, 152 Colo. 347, 351, 382 P.2d 202, 204 (1963).

¶ 20 Fourth, although article 3 of the Children's Code contains extensive procedures bearing upon a petition in dependency and neglect, article 3 contains no procedures for criminal prosecutions. This is significant because the Colorado Code of Criminal Procedure does *not* apply "to proceedings under the 'Colorado Children's Code,'" absent exceptions not pertinent here. § 16-1-102, C.R.S. 2016. It would be incongruous to conclude that the General Assembly intended article 3 proceedings under the Children's Code to include criminal prosecutions for violating section 19-3-304 while simultaneously providing that the Code of Criminal Procedure does not apply to such prosecutions. A more likely interpretation — and one more consistent with article 3 as a whole — is that the General Assembly did not intend criminal prosecutions of any sort to be considered article 3 proceedings.

¶ 21 Accordingly, we conclude that criminal prosecutions for violations of section 19-3-304 do not constitute "proceedings

brought under" article 3 within the meaning of section 19-3-206. As a result, section 19-3-206 does not divest district attorneys of their authority to prosecute mandatory reporters for violating section 19-3-304.[2]

## IV.    Conclusion

¶ 22    Because the county court correctly interpreted the relevant statutes — and thus did not abuse its discretion or exceed its jurisdiction — the district court's judgment denying relief under Rule 106(a)(4) is affirmed.

JUDGE FURMAN and JUDGE MILLER concur.

---

[2] Because we rely on the plain language of section 19-3-206, C.R.S. 2016, as read in the context of the statute as a whole and the comprehensive statutory scheme, we do not address plaintiffs' reliance on legislative history. *See Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1089 (Colo. 2011).