Opinion by JUDGE NAVARRO
¶ 1 In this workers' compensation action, Judy Berthold (claimant) challenges an order of the Industrial Claim Appeals Office (Panel). To resolve claimant's challenge, we must consider the effect of her approved request to begin treatment with a new physician. Specifically, did her treatment with her newly approved physician automatically terminate her first physician's status as an authorized treating physician (ATP)? The answer *812 matters because her first physician opined that claimant had reached maximum medical improvement (MMI) after claimant had begun treating with her new physician. If her first physician was no longer an ATP at the time of this MMI finding, claimant's employer could not properly rely on that finding.
¶ 2 To answer the broader query, we must address two subsidiary questions of first impression. First, does newly enacted section 8-43-404(5)(a)(VI)(B), C.R.S. 2017-which automatically terminates the relationship between an ATP and an injured worker upon treatment with a new ATP-apply retroactively to a request to change physicians made before the statutory provision took effect? Second, if it does not apply retroactively, does the termination provision contained in section 8-43-404(5)(a)(IV) apply to all changes of physician or is it limited to changes made under section 8-43-404(5)(a)(III)"within ninety days after the date of the injury"?
¶ 3 We hold that the termination provision of section 8-43-404(5)(a)(VI)(B) applies only to a request to change a treating physician made after the effective date of that provision. We further hold that section 8-43-404(5)(a)(IV) applies only to changes of physician obtained under section 8-43-404(5)(a)(III). Because claimant's request to change her physician predated section 8-43-404(5)(a)(VI)(B), and because the request was not granted under section 8-43-404(5)(a)(III), her treatment with her new physician did not automatically terminate her first physician's status as an ATP. We therefore affirm the Panel's order.
I. Factual and Procedural History
¶ 4 Claimant worked as a property damage adjuster for Eberl's Claim Service (employer). In June 2014, she sustained injuries from falling off a roof she was inspecting for employer.
¶ 5 After the accident, claimant received medical care from Dr. Anjmun Sharma, an ATP. Several months later, claimant requested and received permission to begin treatment with Dr. William Miller. Dr. Miller evaluated her for the first time in February 2015. Yet, even after the agreed-upon change of claimant's physician, employer periodically sent her to Dr. Sharma for "demand appointments."
¶ 6 In January 2016, Dr. Sharma saw claimant and reported that she "was noncompliant in presenting for functional capacity evaluation and noncompliant in her completion of this task. I have, therefore, assigned maximum medical improvement [MMI] date as of 01/22/2016 with this report serving as the final dictated report for this claim." Dr. Miller, however, disagreed with Dr. Sharma's MMI determination, criticizing it for lacking "medicolegal sense." Despite this disagreement between medical practitioners, employer filed a final admission of liability (FAL) based on Dr. Sharma's MMI conclusion.
¶ 7 Claimant challenged the FAL's validity on the ground that, under section 8-43-404(5)(a)(IV)(C), Dr. Miller's assumption of her care in February 2015 automatically terminated Dr. Sharma's status as her ATP, rendering him unqualified to issue an MMI finding. As a result, she argued, the FAL was invalid and she was entitled to continuing temporary total disability benefits. Employer countered that section 8-43-404(5)(a)(IV)(C)'s automatic termination provision applied only to so-called "one-time" changes of physician permitted by section 8-43-404(5)(a)(III). And claimant's change of physician did not satisfy section 8-43-404(5)(a)(III).
¶ 8 The administrative law judge agreed with claimant, finding that Dr. Sharma's status as claimant's ATP terminated when she began treating with Dr. Miller, per section 8-43-404(5)(a)(IV)(C). The Panel reached the opposite conclusion, however, and agreed with employer that section 8-43-404(5)(a)(IV)(C) applied only if the worker sought a change of physician under section 8-43-404(5)(a)(III). The Panel further held that the termination provision in section 8-43-404(5)(a)(VI)(B), enacted in 2016, did not apply either because that provision was not in effect when claimant changed physicians.
II. Claimant's Contentions
¶ 9 Claimant contends that employer erred in relying on Dr. Sharma's MMI finding when issuing the FAL because Dr. Sharma *813 was no longer an ATP at the time of his MMI determination. She presents two theories in support: (1) her treating relationship with Dr. Sharma was automatically terminated by section 8-43-404(5)(a)(IV) because it applies to all changes of physician; and (2) even if section 8-43-404(5)(a)(IV) does not apply to her change of physician, her relationship with Dr. Sharma was nonetheless terminated by recently amended section 8-43-404(5)(a)(VI).
¶ 10 Because claimant concedes that her physician change occurred under section 8-43-404(5)(a)(VI), we begin by assessing whether the new termination provision of sub-subparagraph (VI)(B) applies to claimant's change.
III. Does the Termination Provision Added to Section 8-43-404(5)(a)(VI) in 2016 Apply to Claimant's Change of Physician?
¶ 11 In 2016, the General Assembly amended section 8-43-404(5)(a)(VI) to add, among other things, a provision automatically terminating an injured worker's relationship with an ATP once the worker begins treating with a new ATP. Claimant argues that the legislative declaration accompanying this amendment requires it to apply to all workers' compensation claims and, thus, it should apply to all changes of physician regardless of the date of the change. Claimant is mistaken. Even where an amendment to the workers' compensation law applies to a claim regardless of the date of injury, the amendment does not necessarily apply to all transactions within that claim. Instead, the amendment applies only to transactions occurring after the amendment's effective date unless the legislature clearly directs otherwise, which the legislature did not do in the amendment at issue.
A. Relevant Statutory Provisions
¶ 12 In 2014, when claimant sustained her work-related injury, the Workers' Compensation Act (Act) provided a means of changing physicians under section 8-43-404(5)(a)(VI) :
In addition to the one-time change of physician allowed in subparagraph (III) of this paragraph (a), upon written request to the insurance carrier or to the employer's authorized representative if self-insured, an injured employee may procure written permission to have a personal physician or chiropractor treat the employee. If permission is neither granted nor refused within twenty days, the employer or insurance carrier shall be deemed to have waived any objection to the employee's request. Objection shall be in writing and shall be deposited in the United States mail or hand-delivered to the employee within twenty days.
§ 8-43-404(5)(a)(VI), C.R.S. 2014. Notably, this version of subparagraph (VI), the mechanics of which had not changed since the Act's 1990 reenactment, did not contain a provision terminating a claimant's relationship with a prior ATP upon a claimant's examination with a new ATP. Consequently, the Panel had held that the mere selection or designation of a new ATP under subparagraph (VI) did not have the effect of "deauthorizing" the previously authorized ATP. Jeppsen v. Huerfano Med. Ctr. , W.C. No. 4-440-444, 2003 WL 22997979 (Colo. I.C.A.O. Dec. 17, 2003) ; Granger v. Penrose Hosp. , W.C. No. 4-351-885, 1999 WL 603156 (Colo. I.C.A.O. July 20, 1999).
¶ 13 In 2016, the legislature amended subparagraph (VI) to include automatic termination language as well as other criteria and consequences of a physician change under this subparagraph:
(VI)(A) In addition to the one-time change of physician allowed in subparagraph (III) of this paragraph (a), upon written request to the insurance carrier or to the employer's authorized representative if self-insured, an injured employee may procure written permission to have a personal physician or chiropractor treat the employee. The written request must be completed on a form that is prescribed by the director. If permission is neither granted nor refused within twenty days after the date of the certificate of service of the request form, the employer or insurance carrier shall be deemed to have waived any objection to the employee's request. Objection shall be in writing on a form prescribed by the director and shall be served on the employee or, if represented, the *814 employee's authorized representative within twenty days after the date of the certificate of service of the request form....
(B) If an injured employee is permitted to change physicians under sub-subparagraph (A) of this subparagraph (VI) resulting in a new authorized treating physician who will provide primary care for the injury, then the previously authorized treating physician providing primary care shall continue as the authorized treating physician providing primary care for the injured employee until the injured employee's initial visit with the newly authorized treating physician, at which time the treatment relationship with the previously authorized treating physician providing primary care is terminated .
(C) Nothing in this subparagraph (VI) precludes any former authorized treating physician from performing an examination under subsection (1) of this section.
(D) If an injured employee is permitted to change physicians pursuant to sub-subparagraph (A) of this subparagraph (VI) resulting in a new authorized treating physician who will provide primary care for the injury, then the opinion of the previously authorized treating physician providing primary care regarding work restrictions and return to work controls unless that opinion is expressly modified by the newly authorized treating physician.
Ch. 272, sec. 4, § 8-43-404(5)(a)(VI), 2016 Colo. Sess. Laws 1129 (emphasis added). The amended statute went into effect July 1, 2016. See Ch. 272, sec. 5, 2016 Colo. Sess. Laws 1129.
B. The 2016 Amendment Does Not Apply to Claimant's Change
¶ 14 Claimant first saw Dr. Miller in February 2015, nearly a year and a half before the 2016 amendment went into effect. See id. Yet, claimant argues that the termination provision in section 8-43-404(5)(a)(VI)(B) should apply to her claim because the legislature declared that the 2016 amendment applies to all claims. Claimant rightly observes that the legislature prefaced the amendment with the declaration "that this act contains changes to existing law that are procedural and apply to all workers' compensation claims, regardless of the date the claim was filed ." Ch. 272, sec. 1, 2016 Colo. Sess. Laws 1127 (emphasis added). But, is this declaration sufficient to apply the amendment to completed transactions that occurred before the amendment took effect? We conclude that it is not.
¶ 15 "A statute is applied prospectively if it operates on transactions that occur after its effective date; it is applied retroactively if it operates on transactions that have already occurred or on rights and obligations that existed before its effective date." Specialty Rests. Corp. v. Nelson , 231 P.3d 393, 399 (Colo. 2010). "Absent legislative intent to the contrary, a statute is presumed to be prospective in its operation." Id. at 402. "In workers' compensation cases, the substantive rights and liabilities of the parties are determined by the statute in effect at the time of a claimant's injury, while procedural changes in the statute become effective during the pendency of a claim." Am. Comp. Ins. Co. v. McBride , 107 P.3d 973, 977 (Colo. App. 2004). Hence, absent language expressing a contrary intent, a substantive amendment to the Act applies prospectively only to injuries sustained after the amendment's effective date. See Rosa v. Indus. Claim Appeals Office , 885 P.2d 331, 334 (Colo. App. 1994) ("[T]he general rule [is] that the rights and liabilities of the parties are determined by the statute in effect at the time of injury, except that procedural changes may be immediately applied to ongoing claims for benefits.").
¶ 16 "Statutes cannot be construed in such a way as to defeat obvious legislative intent, and the best guide to intent is the declaration of policy which forms the initial part of an enactment." Walgreen Co. v. Charnes , 819 P.2d 1039, 1044 (Colo. 1991) (citation omitted). Contrary to claimant's contention, however, we do not view the legislative declaration here as clearly and unambiguously applying the amendment to completed transactions. The declaration states only that it applies to all workers' compensation claims. We must decide, then, if the legislature intended the amendment to apply not only to all claims but also to completed transactions within those claims.
*815 ¶ 17 This question is governed by the principles discussed in Specialty Restaurants , as the Panel and the parties have recognized. In that case, the supreme court analyzed a 2007 amendment to section 8-43-406, C.R.S. 2017, governing lump sum payments. The amendment "increased the maximum aggregate lump sum an employee may receive." Specialty Rests. , 231 P.3d at 395. The increased maximum lump sum went into effect just months after the claimant, Stephanie Nelson, had received a lump sum payment for her claim. After the amendment's effective date, she requested the difference between the lump sum she received and the newly adopted maximum aggregate payment. Id. at 396.
¶ 18 The legislation analyzed in Specialty Restaurants did not include a legislative declaration specifying whether the increase to the statutory maximum aggregate lump sum payment applied prospectively or retroactively, nor did it include an effective date for the amendment's adoption. The legislation merely stated that the amendment was approved May 30, 2007. See Ch. 341, 2007 Colo. Sess. Laws 1475. Nelson's employer argued that permitting her to receive the increased aggregate lump sum violated the legislature's intent to apply the amendment only to injuries occurring after the amendment's adoption. The supreme court disagreed. The court concluded that the amendment was merely "procedural in nature" because it did not create, eliminate, or modify vested rights or liabilities. Specialty Rests. , 231 P.3d at 399-400. As a result, the legislature intended the amendment to apply to all claims irrespective of the date of an employee's injury. Id. at 402.
¶ 19 But the supreme court clarified that, while the procedural amendment applied to all claims, the legislature did not express a clear intent to apply the amendment retroactively-i.e., to completed transactions. Id. So, the amendment applied only to transactions that occurred after its effective date. Id. In Nelson's case, her injury and claim predated the amendment's enactment, but the transaction in question (her request for an additional lump sum payment under the new cap) occurred after the amendment's effective date. Because her request came after the amendment's effective date, the request could be considered under the newly increased aggregate cap:
Because the lump sum provision only functions where an employee has affirmatively chosen to elect a lump sum payment, the operative transaction is the employee's request for such payment.... [T]he new $60,000 maximum aggregate operates on Nelson's request for the additional lump sum payment-a transaction occurring after the amendment's enactment. Accordingly, the 2007 amendment is prospective in its operation and applies to all requests for lump sum payments made after the amendment's date of enactment, irrespective of the date of injury.
Id. at 402-03 (citation omitted).
¶ 20 The same is true here. As in Specialty Restaurants , the 2016 amendment to section 8-43-404(5)(a)(VI) is procedural in nature because it does not create, eliminate, or modify vested rights or liabilities. And the legislature clearly intended this procedural amendment to apply to all claims. But, as in Specialty Restaurants , the legislature did not clearly express the intent to apply the amendment to completed transactions within those claims. So, the amendment applies only prospectively to transactions taking place after the amendment's effective date.
¶ 21 The 2016 amendment went into effect well after claimant began treating with her physician, Dr. Miller. She requested the change of physician-the "operative transaction" in the parlance of Specialty Restaurants -in late 2014. Likewise, Dr. Sharma's MMI finding and employer's FAL preceded the amendment by months. In other words, all the transactions pertinent to claimant's change from Dr. Sharma to Dr. Miller occurred before the 2016 amendment to section 8-43-404(5)(a)(VI)(B).
¶ 22 Hence, when employer granted claimant permission to treat with a new ATP under section 8-43-404(5)(a)(VI)(A) and employer later issued the FAL, employer could reasonably presume that Dr. Sharma continued as one of claimant's ATPs, based on prior Panel decisions. As noted, the Panel had long held that the authorization of a new *816 ATP in such circumstances did not terminate a claimant's relationship with a previously authorized ATP. See Jeppsen , 2003 WL 22997979 ; Granger , 1999 WL 603156.[1] To alter the effect of employer's authorizing a new ATP-years after the fact-could upset the parties' reasonable expectations.
¶ 23 In sum, the Panel correctly concluded that the amendment applies to all pending claims but should be applied only to requests for changes of physician made after the amendment's effective date. See also Zerba v. Dillon Cos. , 2012 COA 78, ¶ 37, 292 P.3d 1051 ("[W]e give deference to the Panel's reasonable interpretations of the statute it administers."). Therefore, new section 8-43-404(5)(a)(VI)(B) does not terminate claimant's relationship with Dr. Sharma or invalidate employer's FAL.
IV. Does Section 8-43-404(5)(a)(IV) Apply to Claimant's Change of Physician?
¶ 24 As discussed, claimant was granted a change of physician under section 8-43-404(5)(a)(VI)(A). We have determined that the automatic physician termination provision of newly amended section 8-43-404(5)(a)(VI)(B) does not apply retroactively to this change. An amendment is presumed to change the law. See City of Colorado Springs v. Powell , 156 P.3d 461, 465 (Colo. 2007). So, we presume that, before the enactment of section 8-43-404(5)(a)(VI)(B), a change of physician granted under section 8-43-404(5)(a)(VI)(A) did not automatically terminate an injured worker's treating relationship with her prior physician.
¶ 25 Notwithstanding this presumption, claimant contends that her change of physician under section 8-43-404(5)(a)(VI)(A) automatically terminated her relationship with her prior ATP because of the physician termination provision of section 8-43-404(5)(a)(IV). The Panel disagreed and held that section 8-43-404(5)(a)(IV) applies only to changes of physician obtained under section 8-43-404(5)(a)(III). Under section 8-43-404(5)(a)(III), a claimant, within the first ninety days after sustaining an injury, may request a "one-time" change of physician to another on the employer's physician list. Claimant argues that the Panel erred because subparagraph (IV) should be read independently of subparagraph (III) and, thus, should apply to all changes of physician. We disagree because subparagraphs (III) and (IV) are intertwined and claimant has not rebutted the presumption that the 2016 amendment to subparagraph (VI) changed the law.
A. Relevant Statutory Provisions
¶ 26 In pertinent part, section 8-43-404(5)(a) provides:
(III) An employee may obtain a one-time change in the designated authorized treating physician under this section by providing notice that meets the following requirements:
(A) The notice is provided within ninety days after the date of the injury, but before the injured worker reaches maximum medical improvement;
(B) The notice is in writing and submitted on a form designated by the director. The notice provided in this subparagraph (III) shall also simultaneously serve as a request and authorization to the initially authorized treating physician to release all relevant medical records to the newly authorized treating physician.
(C) The notice is directed to the insurance carrier or to the employer's authorized representative, if self-insured, and to the initially authorized treating physician and is deposited in the United States mail or hand-delivered to the employer, who shall notify the insurance carrier, if necessary, and the initially authorized treating physician;
(D) The new physician is on the employer's designated list or provides medical *817 services for a designated corporate medical provider on the list;
(E) The transfer of medical care does not pose a threat to the health or safety of the injured employee;
....
(IV)(A) When an injured employee changes his or her designated authorized treating physician, the newly authorized treating physician shall make a reasonable effort to avoid any unnecessary duplication of medical services.
....
(C) The originally authorized treating physician shall continue as the authorized treating physician for the injured employee until the injured employee's initial visit with the newly authorized treating physician, at which time the treatment relationship with the initially authorized treating physician shall terminate .
(D) The opinion of the originally authorized treating physician regarding work restrictions and return to work shall control unless and until such opinion is expressly modified by the newly authorized treating physician.
(Emphasis added.) The provision at issue-the physician termination provision-is italicized. Subparagraphs (III) and (IV) were enacted together via a 2007 amendment. See Ch. 204, sec. 1, § 8-43-404(5)(a), 2007 Colo. Sess. Laws 763-66.
B. Because Subparagraphs (III) and (IV) Work Together, Subparagraph (IV) Does Not Apply to Claimant's Change
¶ 27 Section 8-43-404(5)(a)(IV) does not expressly state that it applies only when an injured employee makes a change of physician under section 8-43-404(5)(a)(III). Claimant maintains, therefore, that section 8-43-404(5)(a)(IV)(C) terminates the relationship between an "initially authorized treating physician" and an injured employee whenever the claimant begins treating with a new ATP. Although we appreciate claimant's position, we cannot accept it.
¶ 28 We review statutes de novo. Ray v. Indus. Claim Appeals Office , 124 P.3d 891, 893 (Colo. App. 2005), aff'd , 145 P.3d 661 (Colo. 2006). When analyzing a provision of the Act, "we interpret the statute according to its plain and ordinary meaning" if the language is clear. Davison v. Indus. Claim Appeals Office , 84 P.3d 1023, 1029 (Colo. 2004). And "we give effect to every word and render none superfluous because we 'do not presume that the legislature used language idly and with no intent that meaning should be given to its language.' " Lombard v. Colo. Outdoor Educ. Ctr., Inc. , 187 P.3d 565, 571 (Colo. 2008) (quoting Colo. WaterConservation Bd. v. Upper Gunnison River Water Conservancy Dist. , 109 P.3d 585, 597 (Colo. 2005) ).
¶ 29 We also give deference to the Panel's reasonable interpretations of the Act. Sanco Indus. v. Stefanski , 147 P.3d 5, 8 (Colo. 2006) ; Dillard v. Indus. Claim Appeals Office , 121 P.3d 301, 304 (Colo. App. 2005), aff'd , 134 P.3d 407 (Colo. 2006). Although we are not bound by the Panel's interpretation or its earlier decisions, Olivas-Soto v. Indus. Claim Appeals Office , 143 P.3d 1178, 1180 (Colo. App. 2006), we follow the Panel's interpretation unless "it is inconsistent with the clear language of the statute or with the legislative intent." Support, Inc. v. Indus. Claim Appeals Office , 968 P.2d 174, 175 (Colo. App. 1998).
¶ 30 If we were to consider section 8-43-404(5)(a)(IV) in isolation, we might agree with claimant because that provision seems to apply to all changes of physician. But "we cannot read statutory language in isolation from its context." Berges v. Cty. Court , 2016 COA 146, ¶ 10, 409 P.3d 592. Rather, we must view the Act as a whole and strive to harmonize its provisions because "[a] comprehensive statutory scheme should be construed in a manner which gives consistent, harmonious, and sensible effect to all parts of the statute." Salazarv. Indus. Claim Appeals Office , 10 P.3d 666, 667 (Colo. App. 2000). Claimant's proposed interpretation does not harmonize all provisions of the statute.
¶ 31 As employer notes, the termination provision added to section 8-43-404(5)(a)(VI) in 2016 mirrors that in subparagraph (IV). Employer maintains that it would not have *818 been necessary for the legislature to add parallel termination language to sub-subparagraph (VI)(B) if the termination language in sub-subparagraph (IV)(C) already applied to all changes of physician.
¶ 32 We agree with employer. To harmonize the statute, we must read it as interpreted by employer and the Panel. Claimant's interpretation would render superfluous the termination provision of subparagraph (VI). And if the legislature in 2016 had intended merely to clarify that subparagraph (IV) also applied to changes of physician granted under subparagraph (VI), the legislature could have simply said so. Instead, the legislature enacted a new set of provisions applicable to changes of physician granted under subparagraph (VI). This legislative labor would have been entirely unnecessary if subparagraph (IV) already applied to changes of physician granted under subparagraph (VI). We cannot adopt a reading of the statute that "would render parts of it meaningless and without effect." Keel v. Indus. Claim Appeals Office , 2016 COA 8, ¶ 43, 369 P.3d 807.
¶ 33 Employer also points to particular language in section 8-43-404(5)(a) that confirms that subparagraphs (III) and (IV) work in tandem. Specifically, employer underscores the repetition of words and phrases found only in subparagraphs (III) and (IV) that indicates the legislature intended to limit the termination provision of subparagraph (IV) to "one-time" changes of physician under subparagraph (III). For instance, "designated authorized treating physician" is used in subparagraphs (III) and (IV) but nowhere else in the statute. Repeating "designated authorized treating physician" in subparagraph (IV) after using the term for the first time in subparagraph (III) strongly suggests that the legislature intended subparagraphs (III) and (IV) to work together.
¶ 34 Similarly, the legislature used the adverbs "initially" and "originally" in subparagraphs (III) and (IV) to distinguish a claimant's first authorized treating physician from the "newly authorized treating physician." As with "designated authorized treating physician," the phrases "originally authorized treating physician" and "initially authorized treating physician" appear nowhere else in the statute. In contrast, sub-subparagraph (VI)(B) addresses the termination of a claimant's treating relationship with her "previously authorized treating physician."
¶ 35 The repetition of identical phrases in subparagraphs (III) and (IV) indicates that the legislature intended that the phrases should be applied uniformly in both subsections. See People v. Rediger , 2015 COA 26, ¶ 31, 411 P.3d 907 ("[W]e must ascribe the same meaning to the same words occurring in different parts of the same statute, unless it clearly appears therefrom that a different meaning was intended[.]" (quoting Everhart v. People , 54 Colo. 272, 276, 130 P. 1076, 1078 (1913) )) (cert. granted Feb. 16, 2016). Conversely, "the use of different terms signals an intent on the part of the General Assembly to afford those terms different meanings." Carlson v. Ferris , 85 P.3d 504, 509 (Colo. 2003).
¶ 36 Consequently, we cannot ignore the legislature's use of "designated authorized treating physician" and "initially" or "originally authorized treating physician" in section 8-43-404(5)(a)(III) and (IV), as compared to its use of "previously authorized treating physician" in section 8-43-404(5)(a)(VI). By drawing these distinctions, the legislature signaled that subparagraphs (III) and (IV) apply early in the claim process-when a claimant may still be treating with the "initially" or "originally" designated treating physician-while subparagraph (VI) covers other situations in which a claimant may seek to change physicians.
¶ 37 Although the plain language of the provisions, when read in context, is sufficient to resolve this appeal, we also note that the legislative history of this amendment confirms our interpretation. See Specialty Rests. , 231 P.3d at 400-01 ("Our plain language interpretation of the 2007 amendment as procedural in nature is supported ... by the legislative history of the amendment."). Representative Morgan Carroll, the sponsor of the 2007 amendment that added subparagraphs (III) and (IV), explained that the purpose of subparagraph (IV) was to include the "criteria for transfer of care" occasioned *819 by the change of physician permitted under subparagraph (III). Hearings on H.B. 07-1176 before the H. Business Comm., 66th Gen. Assemb., 1st Sess. (Mar. 5, 2007). Representative Carroll's statement corroborates our analysis that subparagraphs (III) and (IV) were intended to work in tandem, and supports our conclusion that subparagraph (IV) does not operate to terminate any physician-patient relationships except those ended by a change of physician under subparagraph (III).
¶ 38 Because claimant's change of physician from Dr. Sharma to Dr. Miller was not granted under section 8-43-404(5)(a)(III), section 8-43-404(5)(a)(IV) did not automatically terminate her relationship with Dr. Sharma when she began treating with Dr. Miller. Therefore, employer's FAL was not invalid simply because it was based on Dr. Sharma's MMI determination.[2]
V. Conclusion
¶ 39 The Panel correctly interpreted section 8-43-404(5)(a). Neither the termination provision of sub-subparagraph (IV)(C) nor the termination provision of sub-subparagraph (VI)(B) applies to claimant's request to change physicians. We agree with the Panel that section 8-43-404(5)(a)(IV)(C) applies only to one-time changes of physician permitted under subparagraph (III) and that section 8-43-404(5)(a)(VI)(B)'s termination provision applies prospectively to requests for changes of physician made after the amendment's effective date. As a result, employer's FAL was not invalid on the ground raised by claimant. The Panel's decision is affirmed.
JUDGE ROMÁN and JUDGE ASHBY concur.

Although most Panel decisions addressing this issue predate the 2007 amendment adding section 8-43-404(5)(a)(III)-(IV), see discussion infra Part IV, the Panel has not repudiated its position since that amendment. On the contrary, the Panel recently reiterated that the addition of a new ATP does not automatically terminate a prior physician's status as an ATP, at least outside the context of a change permitted by subparagraph (III). See Mohammed v. Cargill Meat Sols. , W.C. No. 4-951-860-03, 2016 WL 439788 (Colo. I.C.A.O. Jan. 27, 2016).

We express no opinion on whether claimant may still challenge Dr. Sharma's MMI determination by requesting a division-sponsored independent medical examination.